RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0210P (6th Cir.)
File Name: 01a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WRENCH LLC, a Michigan
Limited Liability Company;
JOSEPH SHIELDS; THOMAS
RINKS,
     *Plaintiffs-Appellants,*

     *v.*

TACO BELL CORP.,
     *Defendant-Appellee.*

No. 99-1807

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00045—Gordon J. Quist, District Judge.

Argued: September 20, 2000

Decided and Filed: July 6, 2001

Before: BATCHELDER and COLE, Circuit Judges;
GRAHAM, District Judge.[*]

_____

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

_____

**COUNSEL**

**ARGUED:** Jeffrey O. Birkhold, WARNER, NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellants. Randall G. Litton, PRICE, HENEVELD, COOPER, DeWITT & LITTON, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jeffrey O. Birkhold, Douglas A. Dozeman, Valerie P. Simmons, WARNER, NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellants. Randall G. Litton, PRICE, HENEVELD, COOPER, DeWITT & LITTON, Grand Rapids, Michigan, Richard J. O'Brien, Paul E. Veith, SIDLEY & AUSTIN, Chicago, Illinois, Arthur S. Friedman, FRIEDMAN, WANG & BLEIBERG, P.C., New York, New York, for Appellee.

_____

**OPINION**

_____

JAMES L. GRAHAM, District Judge. This case raises a question of first impression in this circuit regarding the extent to which the Copyright Act preempts state law claims based on breach of an implied-in-fact contract. Plaintiffs-Appellants Wrench LLC, Joseph Shields, and Thomas Rinks brought this diversity action against Defendant-Appellee Taco Bell Corporation ("Taco Bell"), claiming breach of implied contract and various torts related to Taco Bell's alleged use of appellants' ideas. In three separate opinions, the district court found that the Copyright Act, 17 U.S.C. § 301, preempted all of appellants' claims, including those based on breach of an implied-in-fact contract. On that basis, as well as on the alternate ground that appellants' concept lacked the novelty necessary to sustain their claims, the district court granted summary judgment to Taco Bell. Appellants now appeal the district court's grant of summary judgment, and argue the following: (1) that the district court erred in its preemption analysis under both the "subject matter" and "equivalency" prongs of 17 U.S.C. § 301(a); and, (2) that the district court

generally but that novelty to the buyer would suffice to support a contract-based claim. *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 (2nd Cir. 2000) ("[T]he *Apfel* court clarified that the longstanding requirement that an idea have originality or general novelty in order to support a misappropriation claim does not apply to contract claims. . . . For contract-based claims in submission-of-idea cases, a showing of novelty to the buyer will supply sufficient consideration to support a contract.").

While we conclude that Michigan would not impose a requirement of novelty in an action based upon a contract implied in fact, it does not appear that the result of this case would change even if Michigan were to follow the New York view, which requires only novelty to the defendant. Here, Taco Bell does not claim that it was aware of appellants' ideas prior to disclosure. Accordingly, we find that the district court erred in granting summary judgment to the appellee on the ground that appellants failed to show that their ideas were novel or original.

### III. CONCLUSION

The judgment of the district court is **REVERSED** and this action is **REMANDED** to the district court for further proceedings consistent with this opinion.

erred in holding that novelty was required to sustain their implied-in-fact contract claim, and further that their ideas and concepts lacked novelty as a matter of law. For the reasons that follow, we **REVERSE** the judgment of the district court and remand this case for further proceedings.

### I. BACKGROUND

Appellants Thomas Rinks and Joseph Shields are creators of the "Psycho Chihuahua" cartoon character which they promote, market, and license through their wholly-owned Michigan limited liability company, Wrench LLC. The parties have described Psycho Chihuahua as a clever, feisty dog with an attitude; a self-confident, edgy, cool dog who knows what he wants and will not back down.

In June 1996, Shields and Rinks attended a licensing trade show in New York City, where they were approached by two Taco Bell employees, Rudy Pollak, a vice president, and Ed Alfaro, a creative services manager. Pollak and Alfaro expressed interest in the Psycho Chihuahua character, which they thought would appeal to Taco Bell's core consumers, males aged eighteen to twenty-four. Pollak and Alfaro obtained some Psycho Chihuahua materials to take with them back to Taco Bell's headquarters in California.

Upon returning to California, Alfaro began promoting the Psycho Chihuahua idea within Taco Bell. Alfaro contacted Rinks and asked him to create art boards combining Psycho Chihuahua with the Taco Bell name and image. Rinks and Shields prepared the art boards and sent them to Alfaro along with Psycho Chihuahua T-shirts, hats, and stickers for Alfaro to use in promoting the character. Because Alfaro was not part of the marketing group at Taco Bell, he first sought to gain support for Psycho Chihuahua from top executives outside of the marketing department. After several meetings with non-marketing executives, Alfaro showed the Psycho Chihuahua materials to Vada Hill, Taco Bell's vice president of brand management, as well as to Taco Bell's then-outside advertising agency, Bozell Worldwide. Alfaro also tested the Psycho Chihuahua marketing concept with focus groups to

gauge consumer reaction to the designs submitted by Rinks and Shields.

During this time period, Rinks told Alfaro that instead of using the cartoon version of Psycho Chihuahua in its television advertisements, Taco Bell should use a live dog, manipulated by computer graphic imaging, with the personality of Psycho Chihuahua and a love for Taco Bell food. Rinks and Alfaro also discussed what it was going to cost for Taco Bell to use appellants' character, and although no specific numbers were mentioned, Alfaro understood that if Taco Bell used the Psycho Chihuahua concept, it would have to pay appellants.

In September 1996, Rinks and Shields hired Strategy Licensing ("Strategy"), a licensing agent, to represent Wrench in its dealings with Taco Bell. Representatives from Strategy contacted Alfaro about Taco Bell's interest in the Psycho Chihuahua concept, and presented him with additional materials for presentation to Taco Bell's advertising agency. These materials described Psycho Chihuahua as "irreverent," "edgy," and "spicy," with an "over-the-top" attitude and an "insatiable craving" for Taco Bell food. Throughout the late summer and fall of 1996, Alfaro continued his discussions with Wrench about developing Psycho Chihuahua for Taco Bell's use.

On November 18, 1996, Strategy representatives forwarded a licensing proposal to Alfaro. The proposal provided that Taco Bell would pay Wrench a fee based upon a percentage of the money spent on advertising; a percentage of Taco Bell's retail licensing sales; and a percentage of the cost of premiums, such as toys sold at Taco Bell restaurants. Taco Bell did not accept this proposal, although it did not explicitly reject it or indicate that it was ceasing further discussions with Wrench.

On December 5, 1996, Alfaro met with Hill, who had been promoted to the position of chief marketing officer, and others, to present various licensing ideas, including Psycho Chihuahua. On February 6, 1997, Alfaro again met with

*Reeves*, 926 P.2d at 1130, 1141-1142. Since the Michigan court in *Sarver* quoted *Reeves* on the requirement of novelty in an action based on conversion and went on to hold that the plaintiff's contract claim survived notwithstanding lack of novelty, we conclude that Michigan follows *Reeves* and the California cases which dispense with the requirement of novelty in actions based on implied-in-fact contracts.

In its analysis of the issue of novelty in *Wrench III*, the district court relied heavily on New York cases. *See Wrench III*, 51 F. Supp. 2d at 857. We think it unlikely that Michigan would follow the New York position on novelty in light of *Sarver*. Be that as it may, the conflict between the California and New York authorities referred to in *Reeves* was largely resolved by a 1993 decision of New York's highest appellate court in *Apfel v. Prudential-Bache Secs. Inc.*, 616 N.E.2d 1095 (N.Y. 1993)), wherein the New York Court of Appeals expressly rejected the proposition that novelty is required in all cases involving disclosure of ideas:

> Defendant does not claim that it was aware of the idea before plaintiffs disclosed it but, rather, concedes that the idea came from them. When a seller's claim arises from a contract to use an idea entered into *after* the disclosure of the idea, the question is not whether the buyer misappropriated property from the seller, but whether the idea had value to the buyer and thus constitutes valid consideration. In such a case, the buyer knows what he or she is buying and has agreed that the idea has value, and the Court will not ordinarily go behind that determination. The lack of novelty, in and of itself, does not demonstrate a lack of value [citing *Keller v. American Chain Co.*, 255 N.Y. 94, 174 N.E.74 (1930)].

616 N.E.2d at 1098.

The Second Circuit, citing *Apfel*, recently reversed the award of summary judgment in *Nadel v. Play By Play Toys & Novelties, Inc.*, 34 F. Supp. 2d 180 (S.D.N.Y. 1999), one of the cases cited by the district court in *Wrench III*, holding that New York law no longer required novelty and originality

rather than for the idea itself, she has stated a breach of contract claim." *Id.* The *Sarver* court did *not* impose a requirement of novelty on plaintiff's contract claim.

As noted above, the *Sarver* court quoted with approval the decision of the Supreme Court of Alaska in *Reeves v. Alyeska Pipeline Services Co.* In *Reeves*, plaintiff had proposed the idea of creating a visitor center at a location where visitor's could view the Alaska oil pipeline. He brought an action alleging tort and contract claims against the pipeline servicing company, which subsequently established such a visitor center. The Supreme Court of Alaska held that the element of novelty was not required for plaintiff's implied contract claim:

> Relying largely on cases from New York, Alyeska argues that novelty and originality should be required in an implied-in-fact claim. Reeves responds that we should follow California's example and not require novelty as an essential element of this sort of claim.

> Idea-based claims arise most frequently in the entertainment centers of New York and California, but New York requires novelty, whereas California does not. (Citations omitted).

> We prefer the California approach. An idea may be valuable to the recipient merely because of its timing or the manner in which it is presented. . . .

> Implied in fact contracts are closely related to express contracts. Each requires the parties to form an intent to enter into a contract. It is ordinarily not the court's role to evaluate the adequacy of the consideration agreed upon by the parties. *Carroll v. Lee*, 148 Arizona 10, 712 P. 2d 923, 926-27 (1986). The bargain should be left in the hands of the parties. If parties voluntarily choose to bargain for an individual's services in disclosing or developing a non-novel or unoriginal idea, they have the power to do so.

appellants and representatives of Strategy to review and finalize a formal presentation featuring Psycho Chihuahua that was to be given to Taco Bell's marketing department in early March 1997. At this meeting, appellants exhibited examples of possible Psycho Chihuahua promotional materials and also orally presented specific ideas for television commercials featuring a live dog manipulated by computer graphics imaging. These ideas included a commercial in which a male dog passed up a female dog in order to get to Taco Bell food.

While Alfaro was meeting with appellants, another marketing firm, TLP Partnership ("TLP"), was also promoting appellants' Psycho Chihuahua to Taco Bell marketing executives. TLP presented several ideas, including the Psycho Chihuahua concept, to Taco Bell in anticipation of an upcoming summer promotion. TLP had discovered Psycho Chihuahua at a trade show in New York and had received Strategy's consent to use the image in its presentation. Alfaro was not aware of TLP's presentation. Following the presentation, Taco Bell conducted a series of focus groups to research the reaction to TLP's proposals. Psycho Chihuahua was received positively by consumers, but Taco Bell decided not to use any of TLP's ideas.

Alfaro was unable to arrange a meeting with the marketing department during March 1997 to present the Psycho Chihuahua materials. On April 4, 1997, however, Strategy made a formal presentation to Alfaro and his group using samples of uniform designs, T-shirts, food wrappers, posters, and cup designs based on the ideas discussed during the February 6, 1997, meeting. Alfaro and his group were impressed with Strategy's presentation.

On March 18, 1997, Taco Bell hired a new advertising agency, TBWA Chiat/Day ("Chiat/Day"). Taco Bell advised Chiat/Day that it wanted a campaign ready to launch by July 1997 that would reconnect Taco Bell with its core group of consumers. Chuck Bennett and Clay Williams were designated as the creative directors of Taco Bell's account.

On June 2, 1997, Bennett and Williams proposed a commercial to Taco Bell in which a male Chihuahua would pass up a female Chihuahua to get to a person seated on a bench eating Taco Bell food. Bennett and Williams say that they conceived of the idea for this commercial one day as they were eating Mexican food at a sidewalk café and saw a Chihuahua trotting down the street, with no master or human intervention, "on a mission." Bennett and Williams contend that this image caused them jointly to conceive of the idea of using a Chihuahua as a way of personifying the intense desire for Taco Bell food. Williams subsequently wrote an advertisement script using a Chihuahua, which Taco Bell decided to produce as a television commercial.

When, in June 1997, Alfaro learned that Chiat/Day was planning to use a Chihuahua in a commercial, he contacted Hill again about the possibility of using Psycho Chihuahua. Hill passed Alfaro on to Chris Miller, a Taco Bell advertising manager and the liaison between Taco Bell's marketing department and Chiat/Day. On June 27, 1997, Alfaro gave Psycho Chihuahua materials to Miller along with a note suggesting that Taco Bell consider using Psycho Chihuahua as an icon and as a character in its advertising. Miller sent these materials to Chiat/Day, which received them sometime between June 28 and July 26.

Taco Bell aired its first Chihuahua commercial in the northeastern United States in July 1997, and received a very positive consumer reaction. On that basis, Taco Bell decided that the Chihuahua would be the focus of its 1998 marketing efforts, and launched a nationwide advertising campaign featuring Chihuahua commercials in late December 1997.

Appellants brought suit in January 1998, alleging breach of implied-in-fact contract as well as various tort and statutory claims under Michigan and California law. Appellee filed a motion to dismiss, which the district court granted in part and denied in part. *See Wrench LLC v. Taco Bell Corp.*, No. 1:98-CV-45, 1998 WL 480871, at *9; 49 U.S.P.Q.2d 1032 (W.D. Mich. June 18, 1998) ("*Wrench I*"). Although the district

Nevertheless, many courts do require novelty in an action based upon an implied contract theory on the ground that there can be no consideration for an implied promise to pay if the idea does not constitute "property." *See* 4 *Nimmer on Copyright* § 16.08[B] at 16-60, 16-62. The authors of *Nimmer on Copyright* have criticized this view. Referring specifically to the dissenting opinion of former California Chief Justice Traynor in *Stanley v. Columbia Broad. Sys.*, 221 P.2d 73, 84 (Cal. 1950), the authors of *Nimmer on Copyright* state:

> If, as suggested above, an implied contract is regarded as an agreement to pay for the disclosure of an idea, rather than for the idea itself, Chief Justice Traynor's . . . remarks lose much of their persuasiveness. It would seem to be a perfectly reasonable assumption that one would obligate himself to pay for the disclosure of an idea that he would otherwise be *legally* free to use, but that in fact he would be unable to use without such disclosure. Some subsequent decisions in California and elsewhere have recognized that the novelty requirement should not be injected by the court in implied contract actions.

4 *Nimmer on Copyright* § 16.08[B] at 16-62. (footnotes omitted).

*Sarver* tells us where Michigan likely stands on this issue. In *Sarver*, plaintiff brought an action against her employer seeking damages for conversion and breach of contract based on the allegation that defendant appropriated an idea which she submitted through an employee suggestion program. The court rejected plaintiff's conversion cause of action finding that plaintiff's idea "was neither novel nor unique" and "did not constitute property subject to a conversion cause of action." *Sarver*, 571 N.W.2d at 763. The *Sarver* court went on to hold, however, that plaintiff had stated a breach of contract claim, stating "to the extent that plaintiff seeks compensation for formulating, drafting, and submitting her idea pursuant to defendant's employee suggestion program,

*I*, the district court cited *Sarver v. Detroit Edison Co.*, 571 N.W.2d 759 (Mich. Ct. App. 1997) in support of its conclusion that Michigan would recognize such a claim. *See Wrench I*, 1998 WL 480871, at *9. Later, in *Wrench III*, the district court relied primarily on New York case law to support its finding that appellants' ideas and concepts were not novel as a matter of law. The district court seems to have assumed, without further discussion, that if the novelty requirement applied to appellants' conversion and misappropriation claims, it would also apply to appellants' implied-in-fact contract claim.

Conversion is based on property law principals. *See Sarver*, 571 N.W.2d at 761. Courts have usually refused to protect ideas on a property theory, but when they have, it has generally been subject to the requirements of novelty and concreteness. *See* 4 *Nimmer on Copyright* § 16.02 at 16-5 to 16-9. In *Sarver*, the Michigan court quoted the following language from *Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130 (Ala. 1996) *(per curiam)*:

> "To protect an idea under a property theory requires that the idea possess property-like traits. Courts consider the elements of novelty or originality necessary for a claim of 'ownership' in an idea or concept. These elements distinguish protectable ideas from ordinary ideas that are freely available for others to use. It is the element of originality or novelty that lends value to the idea itself."

*Sarver,* 571 N.W.2d at 762 (quoting *Reeves*, 926 P.2d at 1143).

Most courts apply a different rule to contract claims, modifying the requirement of novelty in some circumstances and dispensing with it altogether in others. The reason for the distinction is this: property rights are rights against the world and courts are generally unwilling to accord that kind of protection to ideas; contract rights on the other hand are limited to the contracting parties and it should be for them to decide if an idea is sufficiently valuable to be purchased. *See* 4 *Nimmer on Copyright* § 16.02 at 16-5; § 16.08[B] at 16-60.

court dismissed appellants' unjust enrichment, conversion, and dilution claims on the basis that they were preempted by the Copyright Act, *see Wrench I*, 1998 WL 480871, at *5-6, the court held that appellants' misappropriation and unfair competition claims were not preempted because they required appellants to prove an "extra element" not required for a copyright infringement claim, namely, the existence of a legal relationship arising from an implied contract. *See id*. at *6-7. The district court also granted appellants leave to amend their conversion claim so that it might survive preemption. *See id.* at *7-9.[1]

In a second, published, decision, the district court denied appellee's renewed motion to dismiss appellants' tort claims to the extent that they derived from an alleged implied-in-fact contract. *See Wrench LLC v. Taco Bell Corp.*, 36 F. Supp. 2d 787, 790-91 (W.D. Mich. 1998) ("*Wrench II*"). However, the district court granted appellee's motion to strike appellants' claims to the extent that they derived from a theory of quasi-contract or implied-in-law contract. *See Wrench II*, 36 F. Supp. 2d at 790-91. The district court reasoned that such allegations were inconsistent with the court's prior ruling in *Wrench I* that appellants' unjust enrichment claim was preempted. *See id*.

At the close of discovery, the district court granted appellee's motion for summary judgment. *See Wrench LLC v. Taco Bell Corp.*, 51 F. Supp. 2d 840 (W.D. Mich. 1999) ("*Wrench III*"). The district court determined that there was sufficient evidence to support appellants' allegations that the parties had entered into an implied-in-fact contract. *See Wrench III*, 51 F. Supp. 2d at 848. The district court nevertheless held that appellants' contract claim was preempted under the Copyright Act because, in the court's view, appellants' right to be paid under the contract was equivalent to the exclusive rights that the Copyright Act

---

[1] Appellee has not challenged the district court's ruling that insofar as preemption is concerned, appellants' tort claims stand or fall with their contract claims.

grants to authors. *See id*. at 850-58. Based on the court's reasoning in *Wrench I* and *Wrench II*, appellants' remaining tort claims -- conversion, misappropriation, and unfair competition -- were also preempted. *See id*. Although the district court rejected appellee's argument that summary judgment was warranted based on appellee's evidence of "independent creation," the court found as a matter of law that appellants' expressive work was not novel or original, and thus dismissed appellants' claims on that additional ground. *See id*.

The issues before us on appeal are: (1) whether the district court erred in finding that appellants' implied-in-fact contract claim is preempted by the Copyright Act; and, (2) whether the district court erred in finding that novelty was required as an element of appellants' implied-in-fact contract claim and, if so, whether the district court erred in its finding that appellants' ideas and concepts were not novel as a matter of law.

## II. DISCUSSION

This court reviews a district court's grant of summary judgment *de novo*. *See Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 409 (6th Cir. 1999). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party satisfies its burden, "the burden shifts to the nonmoving party to set forth specific facts showing a triable issue."

proving that appellee used appellants' Psycho Chihuahua concept. The district court did not agree with appellants that Taco Bell's Chihuahua strongly resembled Psycho Chihuahua, but nevertheless found that Taco Bell was not entitled to summary judgment on the basis of its affirmative defense of independent creation. *See Wrench III*, 51 F. Supp. 2d at 855-56. Specifically, the district court found that testimony from Taco Bell's interested witnesses on the question of independent creation, by itself, was insufficient to support summary judgment. *Id*.

We agree with the district court's conclusion that the issue of independent creation presents genuine issues of material fact.

### C. Novelty

Appellants assert that the district court erred in determining that novelty was required to sustain their contract claim. The district court found that Michigan law required appellants to prove the originality or novelty of their ideas in order to maintain their claims, concluding that appellants' ideas were not novel because they "merely combined themes and executions that had been used many times in a variety of commercials for different products." *Wrench III*, 51 F. Supp. 2d at 857. The district court thus granted summary judgment in favor of appellee on this alternative basis. *See id*. at 858. We conclude that the district court erred in finding that Michigan law requires novelty in a contract-based claim.

In *Wrench III*, the district court began its discussion of the issue of novelty with a reference to its decision in *Wrench II*, 36 F. Supp. 2d at 790, in which novelty was discussed in the context of appellants' misappropriation and conversion claims. *See Wrench III*, 51 F. Supp. 2d at 857, *citing Wrench II*, 36 F. Supp. 2d at 790. In this section of its *Wrench II* decision, the district court addressed the issue of whether Michigan would recognize an action for conversion of an idea "'if the idea was novel or original and furnished by the plaintiff to the defendant, pursuant to a legal relationship.'" *Id*. (quoting *Wrench I*, 1998 WL 480871, at *9). In *Wrench*

that essential element -- namely, expectation of compensation by both parties -- been present, it would seem that the California cause of action for unjust enrichment could be assimilable to a cause of action sounding in contract, for it would then contain an essential element not envisioned by Section 106. In that event, the unjust enrichment *cum* contract claim would not be pre-empted. See § 1.01[B][1][a] *supra*.

*1 Nimmer on Copyright* § 1.01[B][1][g] at 1-38 n.166.[9]

Here, appellants' implied-in-fact contract claim contains the essential element of expectation of compensation which is an element not envisioned by § 106. *See Cascaden*, 225 N.W. at 511-12 ("Plaintiffs cannot recover on the theory of a contract implied in fact, for the work was not done . . . under circumstances authorizing plaintiffs to entertain an expectation of pay from defendants.").

We conclude that the district court erred with respect to the equivalency prong of the preemption analysis and find that appellants' state law implied-in-fact contract claim is not preempted by the Copyright Act.

### B.  Independent Creation

Appellee argues on appeal that summary judgment should have been granted on the alternate ground that it has shown that the idea to use a live Chihuahua in Taco Bell advertising was independently created by Williams and Bennett at Chiat/Day.  Appellee points to *Kienzle v. Capital Cities/Am. Broad. Co.*, 774 F. Supp. 432, 436 (E.D. Mich. 1991), for the proposition that appellee may rebut a prima facie case of improper use of appellants' ideas by showing that the ideas were independently created. Appellants disagree, and contend that they have presented strong circumstantial evidence

---

[9]This footnote in *Nimmer on Copyright* appears in the same section cited by the *Endemol* court for the proposition that all implied contract claims are preempted.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The district court found that appellants produced sufficient evidence to create a genuine issue of material fact regarding whether an implied-in-fact contract existed between the parties. *See Wrench III,* 51 F. Supp. 2d at 848.  On appeal, Taco Bell argues that this conclusion was erroneous, and asserts that the record contains no evidence of an enforceable contract.  We agree with the district court's finding that appellants presented sufficient evidence to survive summary judgment on the question of whether an implied-in-fact contract existed under Michigan law.  We must therefore determine whether appellants' implied-in-fact contract claim is preempted by federal law.

### A.  Preemption

Section 301 of the Copyright Act provides that:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as defined by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (1994).  In sum, under § 301, a state common law or statutory claim is preempted if:  (1) the work is within the scope of the "subject matter of copyright," as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 199-200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985); *see also National Basketball Ass'n v.*

*Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997); *United States ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1462-63 (4th Cir. 1997); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985). Courts and commentators have described this preemption analysis as encompassing a "subject matter requirement" and a "general scope" or "equivalency" requirement. *See National Basketball Ass'n*, 105 F.3d at 848; 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1]-[2] at 1-10 to 1-57 (1999) [hereinafter *Nimmer on Copyright*].

### 1. Subject Matter Requirement

Appellants contend that the district court erred in finding that their claims fell within the subject matter provisions of the Copyright Act. Appellants argue that their state law claims are based on ideas and concepts that were conveyed to Taco Bell in both *tangible* and *intangible* form. They conclude that their claims do not come within the subject matter of copyright, and are thus not preempted, because § 102(b) expressly excludes intangible ideas and concepts from the subject matter of copyright.[2]

---

[2] Section 102 provides:

§ 102. Subject matter of copyright: In general
(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
(1) literary works;
(2) musical works, including any accompanying words;
(3) dramatic works, including any accompanying music;
(4) pantomimes and choreographic works;
(5) pictorial, graphic, and sculptural works;
(6) motion pictures and other audiovisual works;
(7) sound recordings; and
(8) architectural works.
(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system,

are they promises. They are obligations created by law for reasons of justice.' . . . Quasi contractual recovery is based upon benefit accepted or derived from which the law implies an obligation to pay." An implied in fact contract on the other hand is a consensual agreement presenting the same elements as are found in an express contract except that in an implied in fact contract the promise is not expressed in words but is rather implied from the promisor's conduct.

4 *Nimmer on Copyright* § 16.03 at 10-10 to 16-11 (quoting *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794, 256 P.2d 947, 959 (1953)) (footnotes omitted).

For the purpose of the preemption analysis, there is a crucial difference between a claim based on *quasi*-contract, *i.e.*, a contract implied in law, and a claim based upon a contract implied in fact. In the former, the action depends on nothing more than the unauthorized use of the work. Thus, an action based on a contract implied in law requires no extra element in addition to an act of reproduction, performance, distribution or display, whereas an action based on a contract implied in fact requires the extra element of a promise to pay for the use of the work which is implied from the conduct of the parties. The authors of *Nimmer on Copyright* explain the significance of this difference in their analysis of the Ninth Circuit's decision in *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987),[8] in which the court held that an unjust enrichment claim based on California law was preempted:

In *Del Madera*, however, the court's disposition of the pre-emption argument may have been *dictum*, given the court's alternative holding that, under the facts there presented, an essential element for unjust enrichment was lacking under California law. *Id.* at 978. Further, had

---

[8] Taco Bell and the district court in *Wrench III*, 51 F. Supp. 2d at 853, both cite the Ninth Circuit's decision in *Del Madera Properties* for the proposition that implied-in-fact contracts are preempted.

unauthorized reproduction and use--a promise to pay plaintiff for use of his product"); *Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97 CIV. 7763 (TPG); 1999 WL 179603 at *4 (S.D.N.Y. Mar. 29, 1999) ("KDE's allegation that HBO made an implied promise to pay for its idea is entirely separate and apart from any claim for copyright infringement . . . . KDE's claim for breach of implied promise to pay is not preempted.")

In *Endemol Entm't B.V. v. Twentieth Television, Inc.*, No. CV 98-0608 ABC (BQRX), 1998 WL 785300, 48 U.S.P.Q.2d 1524 (C.D. Cal. Sept. 29, 1998), the case principally relied upon by the district court, the court found that plaintiff's implied contract claim was preempted because it fell "squarely into the category of contract claims that allege no additional rights other than promising not to benefit from the copyrighted work." *Id.* at 1528. The *Endemol* court cited *Nimmer on Copyright* § 1.01[B][1][a] at 1-19, [g] at 1-34 (1997),[7] for the proposition that "implied contracts as a species of *quasi*-contract 'should be regarded as an "equivalent right" and pre-empted[.]'" *Id.* In the instant case, however, appellants' claim is not based on *quasi*-contract; instead, it is based upon an implied-in-fact contract which, under Michigan law, does not exist unless the minds of the parties meet by reason of words or conduct.

The authors of *Nimmer on Copyright* warn against confusing contracts implied in law (*quasi*-contract) and contracts implied in fact:

> Unfortunately, many courts in dealing with idea cases fail to distinguish between a contract implied in law and a contract implied in fact. An action in quasi contract is not a true contract since "'quasi contracts, unlike true contracts, are not based upon the apparent intention of the parties to undertake the performances in question, nor

---

[7] This language is found in the 1999 edition of 1 *Nimmer on Copyright* in § 1.01[B][1][a] at 1-17, [g] at 1-37 to 1-38.

In *Wrench I*, the district court found that appellants' claims fell within the subject matter of copyright "because they are premised upon ideas and concepts fixed in a tangible medium of expression, namely, 'storyboards' and 'presentation materials' furnished by Plaintiffs." 1998 WL 480871, at *4. The district court reasoned that appellants' state law claims depended substantially upon works subject to the copyright protection, and did not arise solely out of intangible concepts that were orally conveyed to Taco Bell. *Id.*

In reaching this conclusion, the district court relied on the Fourth Circuit's decision in *Berge*, in which a plaintiff brought a state law conversion action claiming that defendants had used ideas and methods contained in plaintiff's dissertation without her permission. *See* 104 F.3d at 1456, 1462-63. The plaintiff contended that because ideas and methods are excluded from copyright protection under § 102, her state law claims could not be preempted under § 301. The court rejected this argument on the ground that the scope of protection afforded under copyright law is not the same as the scope of preemption. Rather, the court concluded that "the shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection." *Id.* at 1463.

Appellants urge this court to reject this conclusion for the same reason urged by the plaintiff in *Berge*. Specifically, appellants argue that *Berge* does not comport with a literal reading of § 102(b), which expressly excludes ideas and other intangible forms of expression from copyright protection. Appellants rely on several district court cases which have held that because ideas and concepts are not afforded copyright

---

method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

protection, they are not within the subject matter of copyright.[3]

The appellate courts that have addressed this question have disagreed with the reasoning of the decisions cited by appellants, however. The Second, Fourth, and Seventh Circuits have held that the scope of the Copyright Act's subject matter extends beyond the tangible expressions that can be protected under the Act to elements of expression which themselves cannot be protected. *See, e.g., National Basketball Ass'n*, 105 F.3d at 849-850 (holding that subject matter of copyright under § 301 includes "uncopyrightable" as well as "copyrightable" elements); *Berge*, 104 F.3d at 1463 (finding that "scope and protection are not synonyms," and holding that uncopyrightable ideas that make up copyrightable works are within subject matter of copyright); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (finding that uncopyrightable data underlying a copyrightable computer program are within subject matter of copyright). As the Second Circuit reasoned, the fact that copyrightable material contains uncopyrightable expressions should not remove the work from the subject matter of copyright under § 301, because otherwise  "states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of material not meeting federal statutory standards." *Harper & Row*, 723 F.2d at 200 (quoting H.R. Rep. No. 94-1476 at 130 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5746).

---

[3]*See Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1532 n.16 (S.D.N.Y. 1985) ("state laws that protect ideas, as distinct from their expression, are without the subject matter of copyright"); *Canter v. West. Pub. Co.*, 31 F. Supp. 2d 1193, 1999 WL 11701 at *7 (N.D. Cal. 1999) (withdrawn from publication) ("To the extent Plaintiffs seek compensation for the underlying concepts, processes and procedures . . . rather than the specific expression . . . [the] cause of action is not preempted"); *Lattie v. Murdach*, 42 U.S.P.Q.2d 1240, 1997 WL 33803 at *4 (N.D. Cal. Jan. 9, 1997) (finding that "ideas do not come under the subject matter of copyright, and claims based upon them are not preempted").

In finding that appellants' state law contract claim is not preempted, we do not embrace the proposition that all state law contract claims survive preemption simply because they involve the additional element of promise. *See, e.g., Zeidenberg*, 86 F.3d at 1454;[6] *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (appendix). Under that rationale, a contract which consisted only of a promise not to reproduce the copyrighted work would survive preemption even though it was limited to one of the exclusive rights enumerated in 17 U.S.C. § 106. If the promise amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted. The contrary result would clearly violate the rule that state law rights are preempted when they would be abridged by an act which in and of itself would infringe one of the exclusive rights of § 106. As the authors note in 1 *Nimmer on Copyright* § 1.01[B][1][a] at 1-22: "Although the vast majority of contract claims will presumably survive scrutiny . . . nonetheless pre-emption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials."

Our analysis of the preemption issue is supported by the following cases: *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923 (4th Cir. 1988) (defendant's agreement that if he used Acorn's building plans, then he was obligated to either pay for the plans or purchase his building materials from Acorn did not arise out of the subject matter of copyright and was not preempted); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1205 (S.D.N.Y. 1986) (finding that the breach of contract claims "involve an element beyond

---

[6]The Seventh Circuit in *Zeidenberg* did qualify somewhat its broad holding that because contracts, unlike the Copyright Act, do not create exclusive rights but generally affect only their parties, they are not preempted, stating, "[W]e think it prudent to refrain from adopting a rule that anything with the label 'contract' is necessarily outside the preemption clause: the variations and possibilities are too numerous to foresee." 86 F.3d at 1455.

damages and any additional profits of the infringer or statutory damages; and costs and attorneys fees. *See* 17 U.S.C. §§ 502, 503, 504 and 505. The remedies available under copyright law do not include damages for the reasonable value of the defendants' use of the work. *See Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 406-07 (2nd Cir. 1989).[5]

The proposition that a state law breach of contract claim based upon a promise to pay for the use of the work is not preempted is supported by an eminent authority on copyright law. *See* 1 *Nimmer on Copyright* §1.01[B][1][a] at 1-15 to 1-16, which states:

> [*a*] *Breach of Contract*. Adverting first to contract rights, an author's right to royalties under a publication contract may be conditioned upon the publisher's acts of reproduction and distribution of copies of the work, but there is also another crucial act that stands as a condition to the publisher's liability: the publisher's promise to pay the stated royalty. Without a promise there is no contract, while a promise on the part of one who engages in unlicensed reproduction or distribution is not required in order to constitute him a copyright infringer. Certainly, pre-emption should be denied, to the extent that a breach of contract cause of action alleges more than reproduction, adaptation, etc. *simplicter* of a copyrighted work. (Footnotes omitted).

Here, as in the example given in *Nimmer on Copyright*, there is another crucial act that stands as a condition to the appellee's liability, to wit: its promise to pay for the use of the work. Thus, this is a case in which the breach of contract cause of action alleges more than reproduction, adaptation, etc., *simplicter*.

---

[5]*But see Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357, 360-61 (7th Cir. 1985) ("The value of the infringer's use is a permissible basis for estimating actual damages."). This issue is discussed at length at 4 *Nimmer on Copyright* § 14.02[A] at 14-13 to 14-19.

We join our sister circuits in holding that the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections. The record demonstrates that appellants expended considerable effort preparing and presenting tangible expressions of their Psycho Chihuahua concept for appellee, which expressions included storyboards, scripts, drawings, clothing designs, and packaging. The position now urged by appellants would require us to separate out appellants' intangible ideas from these tangible expressions, and would afford appellants a state law claim in the face of clear congressional intent to preempt such action. As the Seventh Circuit has noted, "[o]ne function of § 301(a) is to prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain, which it can accomplish only if 'subject matter of copyright' includes all works of a type covered by sections 102 and 103, even if federal law does not afford protection to them." *Zeidenberg*, 86 F.3d at 1453. Thus, we conclude that the district court did not err with respect to the subject matter prong of its preemption analysis.

## 2. Equivalency Requirement

The second prong of the preemption analysis -- the so-called "equivalency" or "general scope" requirement -- augments the subject matter inquiry by asking whether the state common law or statutory action at issue asserts rights that are the same as those protected under § 106 of the Copyright Act.[4] Under § 301(a), even if appellants' state law

---

[4]Section 106 provides:

§ 106. Exclusive rights in copyrighted works
Subject to sections 107 through 121, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work

claims concern works within the subject matter of copyright, such claims will only be preempted if they assert rights that are "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106[.]" 17 U.S.C. § 301(a).

Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. *See Harper & Row*, 723 F.2d at 200. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim. *See id.; Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 230 (4th Cir. 1993); *National Car Rental Sys., Inc. v. Computer Assocs. Intn'l, Inc.*, 991 F.2d 426, 431 (8th Cir. 1993). We find that appellants' state law implied-in-fact contract claim survives preemption under these rules.

Under Michigan law, "[a]n implied contract, like other contracts, requires mutual assent and consideration." *Spruytte v. Dep't of Corr.*, 266 N.W.2d 482, 483 (Mich. 1978). Michigan draws a clear distinction between contracts implied in fact and contracts implied in law:

The first does not exist, unless the minds of the parties meet, by reason of words or conduct. The second is

---

to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law[.]

*Cascaden v. Magryta*, 225 N.W. 511, 512 (Mich. 1929).

The gist of appellants' state law implied-in-fact contract claim is breach of an actual promise to pay for appellants' creative work. It is not the use of the work alone but the failure to pay for it that violates the contract and gives rise to the right to recover damages. Thus, the state law right is not abridged by an act which in and of itself would infringe one of the exclusive rights granted by § 106, since the right to be paid for the use of the work is not one of those rights.

An extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute the state-created cause of action. The extra element is the promise to pay. This extra element does change the nature of the action so that it is qualitatively different from a copyright infringement claim. The qualitative difference includes the requirement of proof of an enforceable promise and a breach thereof which requires, *inter alia*, proof of mutual assent and consideration, as well as proof of the value of the work and appellee's use thereof.

This qualitative difference is further reflected by the difference in the remedy afforded by the state law claim. Under Michigan law, a plaintiff's remedy for breach of an implied-in-fact contract includes recovery of the reasonable value of the services rendered, considering factors such as the general practice of the industry. *See Rockwell & Bond, Inc. v. Flying Dutchman, Inc.*, 253 N.E.2d 368, 372 (Mich. Ct. App. 1977); *see also Johnson v. Jones*, 921 F. Supp. 1573, 1586 (E.D.Mich. 1996), *rev'd in part on other grounds*, 149 F.3d 494 (6th Cir. 1998); *Comber Tool and Mold Engineering, Inc. v. General Motors Corp.*, 853 F. Supp. 238, 242 (E.D.Mich. 1993).

Under the Copyright Act, remedies for infringement are limited to injunctions; impounding and destruction of infringing articles; recovery of the copyright owner's actual