James **DIAMOND**, Plaintiff,

v.

John A. **GILLIS** (a/k/a John A. White or Jack White), Megan M. White, p/k/a The White Stripes, and Third Man Records, Inc., a Michigan corporation, jointly and severally, Defendants.

No. 04–73889.

United States District Court, E.D. Michigan, Southern Division.

Feb. 17, 2005.

dants.

Anthony L. Deluca, Plunkett & Cooney, Detroit, MI, for Plaintiff.

Morley Witus, Barris, Sott, Detroit, MI, for Defendant.

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

COHN, District Judge.

### I. Introduction

This is a copyright case relating to two sound recordings featuring performances by the musical group The White Stripes.[1] Plaintiff James Diamond (Diamond) is suing John A. Gillis (a/k/a John White or Jack White),[2] Megan White (collectively referred to as the Whites),[3] and Third Man Records, Inc. Diamond asserts the following claims in the first amended complaint:

| COUNT | CLAIM |
|---|---|
| 1 | Breach of Contract Implied in Fact |
| 2 | Declaration of Ownership Interest in Copyrights of Master Sound Recordings |
| 3 | Accounting |
| 4 | Action Against Co–Tenants Pursuant to Michigan Compiled Laws § 554.138 |
| 5 | Unjust Enrichment |

Before the Court is Defendants' Motion to Dismiss Counts Two, Three, Four, and Five, on the following grounds:

| COUNT | GROUNDS FOR DISMISSAL |
|---|---|
| 2 | Barred by the statute of limitations, 17 U.S.C. § 507(b) |
| 3 | Barred by the statute of limitations, 17 U.S.C. § 507(b) |

---

1. Counsel for Plaintiff stated at oral argument that The White Stripes' music is in the genre known as "rock revival" or "garage rock." *See* http://www.whitestripes.com and http://www.whitestripes.net.

2. The complaint lists John A. Gillis as a defendant. The parties' papers indicate that Gillis legally changed his name to Jack White. The Court will refer to him as Jack White.

3. Jack White and Megan White are known as the musical group The White Stripes.

| | |
|---|---|
| 4 | Preempted under 17 U.S.C. § 301 |
| 5 | Preempted under 17 U.S.C. § 301 |

For the reasons that follow, the motion is GRANTED in part and DENIED in part.

## II.  Background[4]

Diamond, a sound engineer and music producer, opened a recording studio in Detroit in the mid 1990s called "Ghetto Recorders."[5]   In January 1999, the Whites asked Diamond to record music sessions at Ghetto Recorders.  Diamond engineered, co-produced, mixed, and edited the sessions.  The result of Diamond's work with the Whites are the master recordings that comprise The White Stripes' first album, entitled "The White Stripes."  The album was released in June 1999 on a small independent record label; it did not result in any profits.  Diamond is identified on the album's artwork as the person responsible for engineering and co-producing the album.

In 2000, Diamond mixed and edited master recordings with the Whites that became The White Stripes' second album, entitled "De Stijl."  The second album was released in 2000 on a small independent label; it did not result in any profits.  Diamond is listed on "De Stijl" as the person responsible for mixing the album with Jack White.

In 2002, the Whites authorized Third Man Records, Inc., a record company, to re-release the recordings Diamond had created with them.  Diamond says that the Whites and/or Third Man Records assigned or licensed "The White Stripes" and "DeStijl" to another company for commercial exploitation in the United States and in return received a multi-million dollar payment.

Diamond says that the Whites registered "The White Stripes" and "DeStijl" with the United States Copyright Office in 2002.  He says that the re-issued copies of the two albums contained a copyright notice for the first time, stating that the Whites were the sole copyright owners.

Diamond filed a first amended complaint on October 12, 2004, claiming, *inter alia,* a declaration of his ownership interest in the copyright for both albums and a share of the proceeds the Whites allegedly have made from the two albums.  Defendants say that Diamond has failed to state a claim on which relief can be granted because (1) his claims for a declaration of copyright ownership and accounting are barred by the Copyright Act's statute of limitations, and (2) his claims for his share of proceeds from the two albums as a co-tenant and for unjust enrichment are preempted by the Copyright Act.

## III.  Discussion

### A.  Legal Standard

A FED.R.CIV.P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted.  "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief."  *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360 (6th Cir.2001).  "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.' " *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 319 (6th Cir.1999)

---

**4.**  The background is gleaned from the parties' papers, primarily the first amended complaint.

**5.**  *See* http://www.ghettorecorders.com.

(quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

## B. Analysis[6]

### 1. Counts Two and Three:

### Declaration of Copyright Ownership and Accounting

■ The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir.1996) (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.1992)).

There is surprisingly sparse precedent on the question of when a cause of action claiming co-ownership of a copyright accrues. The Court of Appeals for the Second Circuit has held that "[a] co-author knows that he or she jointly created a work from the moment of its creation." *Merchant*, 92 F.3d at 56. The Court of Appeals for the Sixth Circuit recently has adopted reasoning from the Court of Appeals for the Ninth Circuit in holding that "the statutory period for any action to establish [copyright] ownership begins to run whenever there is a 'plain and express repudiation' of ownership by one party as against the other." *Ritchie v. Williams*, 395 F.3d 283, 289 n. 5 (6th Cir.2005) (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230–31 (9th Cir.2000); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir.1996)).

The album "The White Stripes" was created in 1999 and "De Stijl" was created in 2000. Defendants say that because Diamond filed suit in 2004, his action is time barred by the three-year statute of limitations period in 17 U.S.C. § 507(b). Defendants say that there was "plain and express repudiation" of authorship when the two albums at issue were created in 1999 and 2000 because Diamond was listed as an engineer and co-producer on "The White Stripes" and as the person responsible for mixing "De Stijl." Diamond says that there was no "plain and express repudiation" until 2002 when the Whites registered "The White Stripes" and "De Stijl" with the U.S. Copyright Office and listed the Whites, but not Diamond, as the authors for copyright purposes. Thus, Diamond claims, the statute of limitations period did not begin to run until 2002 and his claims are not time barred.

In *Aalmuhammed*, the Ninth Circuit held that because creation is the gravamen of an authorship claim, the claim accrues on account of creation and is barred three years from "plain and express repudiation" of authorship. *Aalmuhammed*, 202 F.3d at 1230–31. The plaintiff in *Aalmuhammed* claimed that he was a co-owner of the copyright to the movie "Malcolm X." *Id.* at 1230. The Ninth Circuit held that the movie credits, which listed the plaintiff "far below the more prominent names, as an 'Islamic technical consultant,'" constituted "plain and express repudiation" of authorship. *Id.* at 1231. Defendants say that Diamond was placed on notice of the accrual of his claims in 1999 and 2000 when the credits on the albums' artwork listed Diamond as an engineer and co-producer of "The White Stripes" and as a mixer of "De Stijl."

Defendants have not satisfied the Court that Diamond's claims are time barred under 17 U.S.C. § 507(b). Under the Copy-

---

**6.** Diamond filed a sur-reply brief. Diamond, however, failed to comply with the Eastern District of Michigan's local rules regarding the filing of a sur-reply brief. Nothing in the record indicates that Diamond sought leave from the Court to file a sur-reply. *See* E.D. Mich. LR 7.1(f).

right Act, a copyright for a sound recording generally extends to two elements: "(1) the contribution of the performer(s) whose performance is captured and (2) the contribution of the person or persons responsible for capturing and processing the sounds to make the final recording." *See* Circular 56, *Copyright Registration for Sound Recordings,* U.S. Copyright Office. On this point, the House of Representatives' report concerning adding copyright protection for sound recordings to the Copyright Act is instructive:

> The copyrightable elements in a sound recording will usually, though not always, involve "authorship" both on the part of the performers whose performance is captured and on the part of the record producer responsible for setting up the recording session, capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording. There may be cases where the record producer's contribution is so minimal that the performance is the only copyrightable element in the work, and there may be cases (for example, recordings of birdcalls, sounds of racing cars, et cetera) where only the record producer's contribution is copyrightable.

H.R.Rep. No. 92–487, 92d Cong., 1st Sess. 5 (1971), *reprinted in* 1971 U.S.C.C.A.N. 1566, 1570; *see also* 1–2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.10[A][2][b] (2004).

Because copyright protection in a sound recording can extend to both the actual performance and the "behind-the-scenes" work of a record producer like Diamond, it cannot be said that the fact that Diamond was listed as an engineer and co-producer of "The White Stripes" and as a mixer of "De Stijl" constitutes "plain and express repudiation" of authorship. Webster's New Collegiate Dictionary defines "repudiate" as:

**1:** to divorce or separate formally from (a woman) **2:** to refuse to have anything to do with: DISOWN **3 a:** to refuse to accept; *esp* : to reject as unauthorized or as having no binding force **b:** to reject as untrue or unjust <˜a charge> **4:** to refuse to acknowledge or pay

*See* Webster's New Collegiate Dictionary 975 (1979). Indeed, Diamond's work as an engineer, co-producer, and mixer is within the ambit of authorship for purposes of a copyright in a sound recording. The Court agrees with Diamond that "plain and express repudiation" of authorship did not come until 2002 when the Whites registered the two albums with the U.S. Copyright Office in only their names and not Diamond's name. Thus, his claim for a declaration of copyright ownership under Count Two is not time barred. Diamond's claim under Count Three for an accounting of profits is dependent on his claim for a declaration of copyright ownership under Count Two; thus, Count Three also is not time barred.

### 2. Counts Four and Five:

### Action Against Co–Tenants and Unjust Enrichment

"Congress carefully designed the statutory framework of federal copyright preemption ... to insure that the enforcement of these rights remains solely within the federal domain." *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992). Section 301 of the Copyright Act defines the scope of the Act's preemptive reach. It provides, in pertinent part:

> (a) ... [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, wheth-

er ... published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

.    .    .    .    .

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106. . . .

17 U.S.C. § 301. The referenced "scope of copyright" affords a copyright owner the exclusive right to: (1) reproduce the copyrighted work, (2) prepare derivative works, (3) distribute copies of the work by sale or otherwise, (4) perform certain artistic works publicly, and (5) display certain artistic works publicly. 17 U.S.C. § 106.

■ In determining whether the Copyright Act preempts a cause of action under state law, the Court must employ the "extra element test" adopted by many circuits, including the Court of Appeals for the Sixth Circuit. *See Wrench LLC v. Taco Bell*, 256 F.3d 446, 454 (6th Cir.2001). If the state claim requires an "extra element" beyond those required for copyright infringement, then it is not "equivalent" and not preempted. *Id.* If there is no "extra element," or the "extra elements" are merely "illusory," then the claim is equivalent to a copyright action and it is preempted by the Copyright Act. *Id.* Under the test articulated in *Taco Bell*, the Court must first determine whether the

work is within the scope of copyrightable subject matter as specified in 17 U.S.C. §§ 102–03. *Id.* at 453. Second, the Court must determine whether the state law causes of action in the complaint satisfy the equivalency requirement. *Id.*

There is no dispute that "The White Stripes" and "De Stijl" are sound recordings within the subject matter of copyright. Accordingly, the Court must next analyze the equivalency requirement for Diamond's claims for an action against co-tenants (Count Four) and unjust enrichment (Count Five). In *Taco Bell*, the Sixth Circuit held that

[e]quivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Taco Bell*, 256 F.3d at 456.

■ Count Four of the first amended complaint is an action against co-tenants under MICH. COMP. LAWS § 554.138. That statute is included in the "Real and Personal Property" chapter of Michigan Compiled Laws, under the category "General Provisions Concerning Real Estate." The statute states:

One joint tenant or tenant in common, and his executors or administrators, may maintain an action for money had and received, against his co-tenant for receiving more than his just proportion of the rents or profits of the estate owed

by them as joint tenants or tenants in common.

MICH. COMP. LAWS § 554.148 (West 2005).

The Court first notes that there is a question of whether Diamond may even proceed against Defendants on this theory, as it appears to apply only to actions involving real estate disputes. This aside, however, Diamond claims in Count Four of the first amended complaint that the Whites "have received more than their just proportion of profits derived from commercial exploitation of the master recordings contained in ['The White Stripes'] and ['De Stijl']" and that Diamond is entitled to a percentage of the proceeds the Whites collected from album sales by virtue of an alleged tenants-in-common relationship between the Whites and Diamond. The gravamen of Diamond's claim under Count Four is that the Whites exploited the two albums without providing an accounting to Diamond. His basic claim is that because he claims to be a co-author of the copyrighted material and a co-owner of the copyrights, anyone profiting must account to him—precisely the remedy to which he would be entitled under the Copyright Act. *See* Nimmer § 6.12[A] (2004); *see also* H.R.REP. No. 94–1746, 94th Cong., 2d Sess. 121 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5736 ("There is ... no need for a specific statutory provision concerning the rights and duties of the coowners of a work; court-made law on this point is left undisturbed. Under the bill, as under the present law, coowners of a copyright would be treated generally as tenants in common, with each coowner having an independent right to use or license the use of a work, subject to a duty of accounting to the other coowners for any profits."). Accordingly, Count Four is preempted.

■ Diamond claims in Count Five for unjust enrichment that when he co-produced the sessions for "The White Stripes" and "De Stijl," "he did so with the expectation of appropriate payment for his services," that the Whites "retained the benefit of Diamond's services without having to pay for them," and that "[i]t would be an inequity if [the Whites] were allowed to retain all of the profits [they have] received, and will continue to receive...."

The Court of Appeals for the Sixth Circuit has joined other circuits in holding that claims for unjust enrichment are preempted by the Copyright Act. *See Ritchie,* 395 F.3d 283 at 289; *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.,* 264 F.3d 622, 638 (6th Cir.2001). The leading treatise on Copyright law is in accord. *See* Nimmer § 1.01[B][1][g] ("a state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, preempted insofar as it applies to copyright subject matter."). While this authority seems to easily dispose of the issue, the Court must scrutinize the first amended complaint more carefully because of the distinction between contracts implied in fact and those implied in law:

> For the purpose of the preemption analysis, there is a crucial difference between a claim based on quasi-contract, *i.e.,* a contract implied in law, and a claim based upon a contract implied in fact. In the former, the action depends on nothing more than the unauthorized use of the work. Thus, an action based on a contract implied in law requires no extra element in addition to an act of reproduction, performance, distribution or display, whereas an action based on a contract implied in fact requires the extra element of a promise to pay for the use of the work which is implied from the conduct of the parties.

*Taco Bell,* 256 F.3d at 459.

Here, Diamond titled Count One "Breach of Contract Implied in Fact." An examination of his allegations under the

count, however, reveals that he did not allege the "extra element" of a promise to pay. The only allegation referring to payment is in paragraph 37: "[a] reasonable person in the position of the White Stripes would understand that appropriate payment and credit was expected for Diamond's co-production services." Diamond makes no allegation that Defendants promised to pay him for his production services. Thus, the language of the first amended complaint does not add an "extra element" sufficient to overcome preemption. Accordingly, his claim for unjust enrichment under Count Five also is preempted by the Copyright Act.

SO ORDERED.