TUSTIN ELEVATOR & LUMBER COMPANY *v.* RYNO.

1. CONTRACTS—CONSTRUCTION OF LAKE COTTAGE—EVIDENCE.

    Finding of trial judge that there had been no firm price in oral contract for the construction of a lake cottage *held,* correct in suit to determine rights and liabilities of plaintiff who sought payment for lumber furnished, and defendant contractor who built it for defendant owners and defendant bank in which funds had been deposited for payment, where a basement and fireplaces were added after original plans were made, hence the contractor was properly found not liable either to the plaintiff or the defendant owners.

2. BANKS AND BANKING—CONSTRUCTION OF CONTRACTS.

    Contracts between a bank and its depositors should be required to be performed and must be construed in the same way as contracts between other parties.

3. SAME—DEPOSIT FOR CONSTRUCTION OF COTTAGE.

    Defendant bank with which defendant owners had deposited $5,000 for payment of labor and materials by defendant contractor who was to erect lake cottage on land he had sold to the owners *held,* not liable either to plaintiff lumber dealer who had extended credit on the basis that the money had been placed in escrow by the owners for payment to him or to the owners, where entire deposit had been used by contractor for purpose for which it had been deposited.

4. CONTRACTS — IMPLIED PROMISE — LUMBER DEALER — ESCROW ACCOUNT.

    A promise to pay an account is implied, where defendant owners of lake cottage property represented to lumber dealer that

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 64.
[2] 10 Am Jur 2d, Banks § 338.
    12 Am Jur, Contracts § 226 *et seq.* .
[3] 10 Am Jur 2d, Banks § 366.
[4, 5] 12 Am Jur, Contracts § 239.
[6] 33 Am Jur, Liens §§ 18–23.

they had deposited funds in an escrow account which would be used to pay him, hence, they were properly held liable notwithstanding they had placed funds in an account that was exhausted by their contractor in payment for labor and other materials used in the structure.

5. SAME—IMPLIED CONTRACT—INTENT—ACCEPTANCE OF BENEFIT FOR WHICH COMPENSATION IS CUSTOMARILY PAID.

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances such as where the claimed implied promisor engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated.

6. EQUITY—LIENS—MATERIALMAN.

Plaintiff lumber dealer *held,* entitled to equitable lien upon premises for materials furnished where he has lost his opportunity to be secured by a materialman's lien due to his reliance upon defendant owners' representations as to an escrow account for payment of plaintiff.

Appeal from Lake; Stephens (Rupert B.), J. Submitted April 20, 1964. (Calendar No. 85, Docket No. 50,345.) Decided July 8, 1964.

Action by Tustin Elevator & Lumber Company, an assumed name used by Howard J. Smith, against Gerald Ryno, Mildred Ryno, Clyde Waite, and Lake County State Bank, a Michigan banking corporation, for sums due and owing for building material furnished in construction of a cottage. Cause transferred to chancery side of court, with cross bill filed by defendants Ryno. Decree for plaintiff adjudging defendants Ryno indebted and granting lien on real estate. Defendants Ryno appeal. Affirmed.

*Miltner & Miltner,* for plaintiff.

*Annis & Cooper,* for defendants Ryno.

*Daniel D. Hesslin,* for defendant Waite.

*John E. Campbell,* for defendant Lake County State Bank.

ADAMS, J. This is an action brought by Howard J. Smith, a lumber dealer doing business as Tustin Elevator & Lumber Company, against Gerald Ryno and wife for materials furnished for the construction of a cottage. Plaintiff also sued Clyde Waite, a contractor and carpenter who built the cottage, and the Lake County State Bank in which bank funds were supposedly deposited to plaintiff's account. Upon motion of the Rynos the matter was transferred to the chancery side of the court in order that there might be a full determination of the rights and liabilities of all of the parties in a single proceeding. A decree was entered in favor of plaintiff against the Rynos for the full amount of the account together with an equitable lien upon Rynos' property as security for payment of the same. The court found no liability on the part of contractor Waite or defendant bank. From such decree the Rynos appeal.

Rynos purchased a lot on Big Bass lake from Waite. They entered into discussions with Waite, who had built cottages for others, for the construction of a cottage. Waite showed them cottages he had built, and 1 in particular that had cost $3,800. In August of 1960 he agreed to build Rynos a cottage for this amount. It was an oral agreement. Rynos contend the contract was for a fixed price. Waite contends the contract was for cost of materials and labor. There were no written specifications or formal plans. The first agreement was changed to call for the construction of a basement and 2 fireplaces. The Rynos claim this increased the contract price from $3,800 to $5,800. Waite insists that a

fixed sum was never agreed to and that changes in the plans were made from time to time.

Waite needed funds in order to proceed. He had had an account with the Lake County State Bank designated as "Clyde Waite Building Fund" which account was used for the construction of other cottages. Rynos were to deposit funds with the Lake County State Bank for the use of Waite. The exact manner of the deposit and the availability of the funds to Waite are the main points in controversy.

Rynos obtained a check in the sum of $3,000 from their Grand Rapids bank. They went to the Lake County State Bank where they contacted a teller, Robert Radke, whose version of what occurred is as follows:

"*A.* Well, I was tending my window in the bank and Mr. Ryno came to my window and introduced himself and his wife and said he was building a cottage up at Bass lake, or going to build a cottage and was going to have Mr. Clyde Waite do the construction for him. And, he wanted to put some money in the bank to get the thing going and he was going to open the account in Clyde Waite's name, a building fund.

"*Q.* Then what?

"*A.* I told him I didn't think it was a good idea. It was his business but I said I just didn't think he ought to put the money in another man's name, not to cast any reflection on Mr. Waite, but, if anything, it ought to be put in an escrow account where he had control over it and could do the business that way.

"*Q.* What followed your discussion there?

"*A.* Well, I suggested different ways to him. He could put so much in and release so much at a time or have Mr. Waite send him a list of expenses and labor costs at the end of each week and the next week he could write us and release so much to Mr. Waite's account so he could pay the bills.

"*Q.* Was that arrangement satisfactory to Mr. Ryno?

"*A.* No. He said that Clyde would have men to pay, men that were working for him, and Clyde would need money and would be picking up things for him and he wouldn't be up here all the time and he wanted to put it on the account so that it could be drawn by Clyde Waite as he needed it and that's the way I typed the record on the deposit down."

The deposit ticket read:

"To be drawn on by Clyde Waite of Irons Michigan up to full amount for work to be done for Mr. Ryno. Total $3000.00 for credit of Escrow Account —Gerald D. Ryno & Mildred L. Ryno. Date Aug. 20, 1960."

It is claimed that a duplicate of the deposit ticket and a receipt were given to the Rynos, although this is denied by them. A microfilm of the deposit slip made the same day was examined by counsel. The wording on the microfilm is the same as on the deposit slip. Consequently, the contention of the Rynos that the deposit slip was later altered is without merit.

After making the deposit, Rynos advised Waite that everything was all set and that he should proceed with the construction of the cottage. At the suggestion of Waite, the Rynos went to plaintiff Smith's lumber yard to pick out the type of doors and windows for the cottage. Ryno testified as to what took place as follows:

"*Q.* But, you did expect Mr. Smith to furnish the lumber as might be ordered by Mr. Waite and taken to your site, to your cottage location, didn't you?

"*A.* Yes. That was the conversation. It was implied that there was an arrangement that *I was going to buy the lumber at the Tustin Elevator.*

"*Q.* And, you did expect that the bills would be paid for out of the escrow fund that you put in the Baldwin bank?

"*A.* Yes, sir.

"*Q.* And, you conveyed that to Mr. Smith?

"*A.* Yes." (Emphasis supplied.)

Plaintiff Smith's version of what occurred is summed up in the answer to a question on cross-examination, when he said:

"My understanding was that the money was in the escrow account in the Baldwin bank and I would be paid out of that account."

Waite began construction of the cottage. He drew a check on the Lake County State Bank payable from the "Clyde Waite Building Fund" for $225.50 to pay for work on the basement. There were no funds available in his account. Waite received a notice of insufficient funds. He called the bank and advised a woman employee that Mr. Ryno had deposited money for him. The woman employee thereupon transferred the entire $3,000 to Waite's account. During the following weeks he paid the men and paid for materials by checks drawn on the account. The Rynos were at the cottage practically every week end and observed the construction. They saw Waite writing checks, but they thought he was writing the checks on his own account for his own money. On 1 occasion Waite gave Ryno a check for the purchase of plywood in Grand Rapids, which Ryno found he could purchase there cheaper than in Lake county.

On October 21, 1960, a total of $3,488.56 was deposited by Rynos in defendant bank, $2,000 "for credit of Bldg. Acct., Clyde Waite, Irons, Mich.", and $1,488.56 in a separate account on which deposit ticket were notations as follows: "for Bldg. Acct. Dept. $1,488.56"; "Do not release to Mr. Waite until

notified by Mr. Ryno"; and "$1,488.56 for credit of Escrow Acct.—Gerald or Mildred Ryno to Clyde Waite."

In view of these deposits it is difficult to understand how Rynos could not have known that Waite was using their money. Ryno was questioned:

"*Q.* Did not Mr. Waite sit down with you on 1 or more occasions where he wrote out checks on that account?

"*A.* That's right. He sure did. He sat right there at the kitchen table and wrote checks out to his men and I certainly wasn't going to stand over his shoulder. Anyway, he signed them 'Clyde Waite', and right below that, his name, 'building account'."

The time when it became evident that the costs were going to exceed the sum of $5,800 is in dispute. In answer to the question, "When Mr. Waite told you how much was left, did you state anything to him about having to start cutting corners?", Ryno responded, "At that time, I guess there was only 80 some dollars, or something like that." Waite, on the other hand, contends that Ryno was aware of the situation as it progressed, and that he finally turned over to him the check book, all of the paid bills, and a small check to balance out the $5,000 total of the account. His understanding was that Ryno would pay the lumber bill. It is Ryno's claim that it was only at this point that he knew the true situation and then took up with the bank the claimed wrongful transfer of funds from his escrow account to the Clyde Waite Building Fund. Ryno also now contends the cottage was poorly constructed and not in accordance with the agreement of the parties. The circuit judge viewed the premises and found:

"The building is both attractively and competently constructed and will prove to be serviceable for many years."

We have set forth the facts in some detail because only by viewing the progression of events is it possible to evaluate the situation and determine the rights of the parties.

As to the agreement between the Rynos and defendant Waite, the finding of the circuit judge that there was no firm price for the construction of the cottage was correct. The testimony of contractor Waite is convincing:

"I told him the way that I would, that I got $2.50 an hour and I had 2 men that I would have to pay $2.25 an hour and if he put the money where I could check it out, that I would check it out and pay the bills and that way it would cost him just exactly what it cost to build the cabin. If there was any additions, that would be added to it, whatever it took to build them, that is what it would cost him."

This testimony is borne out by the manner in which the parties proceeded—first planning a structure without a basement or fireplaces, and then later changing the plans to include these items as well as other minor changes. Also Ryno was watching costs as evidenced by his purchase of plywood for a cheaper price in Grand Rapids. Consequently defendant Waite is liable neither to the plaintiff nor to defendants Ryno.

With reference to the escrow agreement, the testimony of teller Radke, the writings upon the deposit slips, the testimony of Waite that he would need funds to proceed with construction, and the admissions of defendant Ryno clearly indicate that the $5,000 placed with the bank was to be at the disposal of contractor Waite. All of the money was used for either labor or materials that went into the Rynos' cottage. The only terms of the so-called escrow agreement were that the money could "be drawn on by Clyde Waite of Irons, Michigan up to full amount for work to be done for Mr. Ryno."

"Contracts between a bank and its depositors should be required to be performed and must be construed in the same way as contracts between other parties." *Davidow* v. *Bank of Detroit,* 254 Mich 447, 454, 455.

Whether or not the account is designated as an escrow account, there was no violation of the terms of the deposit. See *Schmid* v. *Village of Frankfort,* 131 Mich 197. The bank assumed no responsibility for supervision of the account. The bank received only the customary fees for a commercial account. It was in no sense a true escrow agent but, rather, was simply carrying out the wishes of the parties even though this was contrary to the advice volunteered by teller Radke. The defendant bank is not liable either to the plaintiff or to Rynos.

As to Rynos' liability for plaintiff's account, it is clear from the record that when the question of payment of the account was raised by plaintiff it was represented to him by Rynos that the funds for payment were available in an escrow account. In reliance thereon credit was extended. The representations having proved incorrect plaintiff is entitled to hold defendants Ryno responsible for payment. There was an implied promise from the Rynos to plaintiff to pay the account by making funds available. The rule is well stated in *Miller* v. *Stevens,* 224 Mich 626, 632:

"A contract is implied where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated,

and although there be no express stipulation between the parties for wages or price the law implies an understanding or intent to pay the value of the services rendered."

If the plaintiff had not relied upon the representations of defendants Ryno, he could have asserted a materialman's lien against their property. Having lost his opportunity to be thus secured, he is entitled to a lien in these proceedings.

The decree of the circuit court is affirmed. Costs upon this appeal are awarded to plaintiff Howard J. Smith, doing business as Tustin Elevator & Lumber Company, and to defendants Clyde Waite and the Lake County State Bank.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and O'HARA, JJ., concurred.