COMBER TOOL AND MOLD
ENGINEERING, INC.,
Plaintiff,

v.

GENERAL MOTORS CORPORATION
and AC Delco, Defendants.

No. 92–71890.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 21, 1993.

Order Denying Motion for Reconsideration
Feb. 8, 1994.

Robert Anderson, Farmington Hills, MI, for plaintiff.

James Loftus, GM Corp., Detroit, MI, for defendants.

*OPINION AND ORDER DENYING JUDGMENT IN FAVOR OF PLAIN-TIFF AND DISMISSING PLAIN-TIFF'S COMPLAINT*

EDMUNDS, District Judge.

Comber Tool and Mold Engineering, Inc. brought suit against General Motors Corpo-

ration (GM) alleging a cause of action for claim and delivery of special goods and for quantum meruit recovery. GM, through its division AC Delco, entered into a contract with Dynaplast Corporation. The contract was a consignment contract under which Dynaplast agreed to manufacture an injection mold machine for GM.[1] Without GM's knowledge, Dynaplast subcontracted the manufacture of certain parts of the machine to Comber Tool.

Comber Tool manufactured and delivered the parts to Dynaplast, and Dynaplast requested that some changes be made to the parts. Prior to Comber Tool's retrieval of the parts and prior to any payment to Comber Tool for the parts, Dynaplast filed for Chapter 11 bankruptcy, and General Motors took possession of the Comber Tool parts. The parts are now valued in excess of the original contract price that Dynaplast was to have paid to Comber Tool.

Comber Tool contends that it has title to the goods. As a result, Comber Tool brought suit to recover the parts and to recover the price of the goods plus their increased value. General Motors argues that it has title to the goods.

This matter came before the Court upon the parties submission of stipulated facts and request for the Court's ruling on trial briefs. The parties agreed that there was no need for the Court to receive evidence, as the issues to be decided are matters of law and not fact. For the reasons set forth below, judgment shall be entered for Defendants and Plaintiff's complaint shall be dismissed.

## I. Facts

The parties have stipulated to the following statement of facts:

"On may (sic) 21, 1988, AC Delco, a division of GM, entered into a contract, in the form of a purchase order (See Exhibit A), with Dynaplast. The contract was a consignment-type contract. The contract called for Dynaplast to fabricate an injection mold machine to be used by GM in the production of Cadillac Allante automobiles. The machine in question would mold parts for an air conditioning duct used in the Allante.

The contract was negotiated by and issued by Dave Templin, the Delco purchaser whose responsibility it was to do so. Mr. Templin's intention was to enter into a contract with Dynaplast only. His expectation was that Dynaplast would do all the work associated with the contract. At no time was Mr. Templin advised that another company was to do any work on this project.

In the Spring (sic) of 1988, Dynaplast Corporation entered into negotiations with Plaintiff, Comber Tool & Mold Engineering, Inc. to manufacture injection molds to be used for the construction of three separate parts for General Motors Allante Cadillac automobile. The injection molds are contracted between the parties pursuant to three separate purchase orders broken down as follows; to wit:

1. Purchase Order T–2436 (Exhibit B)— Mold # 1042 $40,400.00

2. Purchase Order T–2457 (Exhibit C)— Mold # 1043 Shut-off door and link— $16,200.00

3. Purchase Order T–2458 (Exhibit D)— Mold # 1044 Thumb Wheel—$5,800.00 [2]

GM had no knowledge of this process or the resulting contract. On December 6, 1988, the items were taken back to Plaintiff's plant in Canada to re-work said items as requested by Dynaplast and then were again sent back to Dynaplast on January 6, 1989. Thereafter pursuant to Dynaplast's request the items were again returned to Plaintiff on January 11, 1989. Again, on February 10; 1989, the goods were then shipped back to Dynaplast. Thereafter, the president of Comber Tool Mold & Engineering, Inc. and a salesman met with engineers at Dynaplast regarding additional corrections that were to be made on the molds. Pursuant to the mutual agreement of the parties, the molds were tested on March 7, 1989, by Eugene

---

1. Delco and GM are jointly represented and have the same interest in this litigation as codefendants. Thus, when this opinion refers to GM, such references apply equally to Delco and vice versa.

2. Note that the purchase orders are dated June 21, 1988; July 13, 1988; and July 13, 1988 respectively.

Casier and Albert Anderson at Dynaplast and it was again determined that there were still additional corrections that were necessary. Pursuant to this mutual agreement, on March 20, 1989, a Mr. Hauser from Dynaplast Corporation called salesman, Albert Anderson, to pick up the molds for refinishing. Pursuant to that request, a truck was sent to Dynaplast on March 27, 1989, in accordance with the agreement reached between Mr. Hauser and Comber Tool & Mold Engineering, Inc. Copies of the documentation necessary to deliver the items across the United States/Canadian border are attached hereto and labeled Exhibit E. When the representative of Comber Tool arrived at Dynaplast's business location in Troy, Michigan, a receiver had taken control and refused to allow the driver access to the premises. Dynaplast Corporation had been suffering financial problems and filed a petition for Chapter 11 reorganization in the United States District Bankruptcy Court. As set forth in the bankruptcy filing, General Motors Corporation had been essentially keeping Dynaplast Corporation afloat with loans for the purchase of inventory. In order to secure its position General Motors filed a lien against basically all of the inventory of Dynaplast Corporation. Some time just prior to bankruptcy filing General Motors sent a truck over to pick up the inventory that it held a secured interest in. General Motors took possession of the injection molds that were in the process of being created by Plaintiff herein along with that inventory of Dynaplast Corporation that it actually had a lien against. Sometime in early 1989, Dynaplast declared its insolvency and GM secured and removed all its property from the Dynaplast premises. Included in this property was the machine and parts identified with the contract between GM and Dynaplast. The bankruptcy court was made aware of all transactions GM had with Dynaplast. With regard to the contract between GM and Dynaplast, GM had fully paid Dynaplast for all work to be done under the contract prior to their insolvency (See Exhibit F). The injection molds are now being used for part production at the Manchester Plastic Division in Scarborough, Ontario Canada.

Comber never made an attempt to secure payment from Dynaplast. Comber never filed a claim with the bankruptcy court for money lost on the contract. Comber chose to contact GM sometime after Dynaplast's closing and demand that GM pay Comber for the work they had done."

## II. Analysis

### A. Title to the Goods

■ GM entered into a purchase contract with Dynaplast in May of 1988. As this contract was formed prior to Comber Tool's June and July contracts with Dynaplast, it is this contract which must be examined to determine title to the goods.

The contract expressly identifies the goods and provides that title to the goods rests in GM:

> Tool possession note—All tools covered by this order shall be the property of Delco Electronics Division and shall be permanently and legibly marked in such a manner as to denote that tools are the property of Delco Electronics Corporation, for use in manufacture of parts exclusively for us. They shall be stored and maintained by you at no expense to us and shall be subject to delivery to us at any time upon request.

Under the Michigan Commercial Code, title to specially identified goods passes as expressly agreed by the parties. Mich. Comp.Laws Ann. 440.2401(1). Section 440.-2401(1) provides:

> Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the good except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:
>
> (1) *Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 2501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this act. Any retention or reservation by the seller of*

the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on secured transactions (article 9), *title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.*

(Emphasis added).

■ Section 2501 of the Code addresses the identification of goods to a contract as follows:

*The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them.[3] Such identification can be made at any time and in any manner explicitly agreed to by the parties.* In the absence of explicit agreement identification occurs

(a) when the contract is made if it is for the sale of goods already existing and identified;

(b) if the contract is for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;

. . . .

Mich.Comp.Laws Ann. 440.2501(1) (emphasis added). Identification of goods to a contract becomes unconditional if made so by express agreement of the parties, if the buyer participates in the identification, if the seller is insolvent, or if the seller notifies the buyer that the identification is final. R. Steinheimer, Jr., *Practice Commentary* to Mich.Comp. Laws Ann. § 440.2501.

In this case, GM and Dynaplast's contract explicitly identifies the goods, and GM partic-

ipated in the identification. Thus, the identification was unconditional under section 2501.[4] Pursuant to section 2401 Title to the identified goods passed as agreed by the parties—that is, title passed upon the formation of the Dynaplast contract with GM.

Comber Tool points to section 2501(1)(a) and argues that the goods could not be identified to the contract because they had not yet been made. This argument lacks merit. First, it should be noted that subsections 2501(1)(a) and (b) do not apply here; those sections only apply in the absence of an explicit agreement between the parties and here there was an explicit agreement between the parties. Also, it is only in the absence of an express agreement that the rule distinguishes between existing goods and future goods. Further, although section 2501(1) refers to the identification of existing goods, the official comment makes it clear that "there is no requirement in this section that the goods be in deliverable state or that all of the seller's duties with respect to the processing of the goods be completed in order that identification occur." Official Comments to § 2501(1).

Accordingly, title to the goods rests in General Motors/Delco and Comber Tool has no right to claim and delivery of the goods.

### B. Quantum Meruit Recovery

■ A contract implied in law or "quasi contract" is a fiction imposed by the court to avoid unjust enrichment. Where a person receives a benefit from another and it is inequitable that the person retain the benefit, the person has been unjustly enriched and is required to make restitution. *Moll v. County of Wayne,* 332 Mich. 274, 50 N.W.2d 881 (1952); *B & M Die Co. v. Ford Motor Co.,* 167 Mich.App. 176, 421 N.W.2d 620 (1988).

A contract is implied where the intention as to it is not manifested by direct or

---

**3.** Comber Tool argues that title to the goods revested in Comber when Dynaplast rejected the goods, citing Mich.Comp.Laws Ann. § 440.-2401(4). This contention is erroneous. First, it focuses on the contractual relationship between Comber and Dynaplast. As noted above, the governing contract must be the first contract entered, the GM/Dynaplast contract. Also, pursuant to section 2501(1), GM had a special prop-

erty in the identified goods despite GM's option to reject the goods if they were non-conforming.

**4.** Further, when Dynaplast filed for bankruptcy, it was insolvent. Upon this occurrence, the identification of the goods to the contract also became unconditional.

explicit words between the parties, but is to be gathered by implication of proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated, and although there be no express stipulation between the parties for wages or price, the law implies an understanding or intent to pay the value of the services rendered.

*Tustin Elevator & Lumber Co. v. Ryno,* 373 Mich. 322, 330–31, 129 N.W.2d 409 (1964). The party who rendered the services is entitled to "quantum meruit" recovery, whereby the benefitted party is required to pay the reasonable value of services rendered. *United States v. Snider,* 779 F.2d 1151, 1159 (6th Cir.1985).

Comber Tool contends that it rendered services in manufacturing parts for the injection mold machine and that GM benefitted from the services. Comber further argues that although there was no contract between GM and Comber Tool, equity requires that GM pay for the reasonable value of services rendered.

The Court will not imply a contract in this case. This is not the typical quasi-contract case where the conduct of the parties or other pertinent circumstances compel the court to imply a contract. GM cannot be said to have naturally anticipated payment to Comber Tool for the manufacture of the parts. The parties stipulated that:

> The [GM/Dynaplast] contract was negotiated by and issued by Dave Templin, the Delco purchaser whose responsibility it was to do so. Mr. Templin's intention was to enter into a contract with Dynaplast only. His expectation was that Dynaplast would do all the work associated with the contract. At no time was Mr. Templin advised that another company was to do any work on this project.

Further, General Motors had fully paid Dynaplast for all work to be done under the contract prior to Dynaplast's insolvency.

In addition, the equities favor Defendants. GM had a contract with Dynaplast that expressly identified the goods to the contract and established title in GM. As noted above, GM did not intend to contract with Comber Tool, did not expect Comber Tool to do work under the contract, and was never advised that Comber Tool was to do work under the contract. After Dynaplast's insolvency, GM notified the bankruptcy court of all its transactions with Dynaplast. In contrast, Comber Tool never made an attempt to secure payment from Dynaplast and never filed a claim in bankruptcy court. As a result, Comber Tool's claim for quantum meruit recovery must be dismissed.

### III. Conclusion

For the reasons stated above, being fully advised in the premises and having read the pleadings, the Court hereby DENIES Plaintiff's request for judgment in its favor and DISMISSES Plaintiff's complaint.

### ORDER DENYING MOTION FOR RECONSIDERATION

This matter has come before the Court upon Plaintiff's motion for reconsideration. On December 21, 1993, the Court entered a judgment and order denying judgment in favor of Plaintiff and dismissing Plaintiff's complaint. Plaintiff now requests that the Court reconsider its order. The court ordered Defendants to respond to the motion, and a response was filed; thus, the matter was fully briefed.

Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a motion for reconsideration should be granted if the movant demonstrates that the court and the parties have been misled by a palpable defect and that a different disposition of the case must result from a correction of such palpable defect. A motion that merely presents the same issues already ruled upon by the court shall not be granted.

Plaintiff merely presents the same issues already ruled upon and has failed to show any palpable defect. For example, Plaintiff again argues that identification of future goods must be made pursuant to Mich.Comp.

Laws Ann. § 440.2401(1)(b). Plaintiff conveniently ignores the fact that that portion of the statute refers to the identification of goods without an explicit agreement between the parties. To reiterate the court's prior opinion:

> In this case, GM and Dynaplast's contract explicitly identifies the goods, and GM participated in the identification. Thus, the identification was unconditional under section 2501. Pursuant to section 2401 title to the identified goods passed as agreed by the parties—that is, title passed upon the formation of the Dynaplast contract with GM.

Opinion and Order p. 241. Further, to allay Plaintiff's concern regarding the application of this opinion to other cases, it should be emphasized that the court's opinion must be strictly limited to the unique facts of this case.

Because Plaintiff's motion fails to demonstrate that the court and the parties were misled by any palpable defect, Plaintiff's motion for reconsideration is hereby DENIED.