*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBRA NASH,

       Plaintiff-Appellee,

v

DAVID KERTI and AMY VANSTON,

       Defendants-Appellants.

UNPUBLISHED
March 9, 2023

No. 358494
Oakland Circuit Court
LC No. 2021-185536-AV

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendants David Kerti and Amy Vanston appeal by delayed leave granted[1] the circuit court's order affirming the district court's order awarding possession of the subject property to plaintiff Debra Nash.

Plaintiff and her then-husband, Jamie Nash, leased a home that they owned in Lake Orion to defendants in August 2016 by a written lease obligating defendants to pay plaintiff and Nash $1,500 a month. Defendants claim that there was an understanding among the parties at the time that they would be purchasing the subject property by a land contract. Plaintiff and Nash divorced in March 2020, and plaintiff was awarded the subject property in the divorce. At about the same time, defendants ceased making the $1,500 monthly payments to plaintiff, so she sought to evict them as tenants. Defendants, however, argued that they were actually vendees of an implied-in-fact land contract. The district court agreed with plaintiff and evicted defendants by summary proceedings. The circuit court affirmed.

On appeal, defendants argue that the summary proceedings violated procedural due process because they were not allowed a realistic time period to present fact-specific evidence showing that the parties' relationship was governed by an implied-in-fact land contract, not the written lease. Relatedly, defendants argue that the district court abused its discretion by refusing to

---

[1] *Nash v Kerti*, unpublished order of the Court of Appeals, entered February 10, 2022 (Docket No. 358494).

-1-

adjourn the hearing to allow them more time to present evidence in that regard. Finally, defendants argue that the evidence would have showed that they partially performed on the implied-in-fact land contract between 2016 and 2020, thus rendering it enforceable notwithstanding the statute of frauds.

We conclude that any procedural error by the district court was harmless because the parties' relationship was governed by the written lease, not the alleged implied-in-fact land contract. Therefore, we affirm the circuit court.

## I. FACTS

On August 8, 2016, plaintiff and Nash, as owners of the subject property, entered into a "Lease Agreement" with defendants to lease the subject property. The lease provided, in relevant part, as follows:

> 1. Tenant will lease the house and detached garage with lot on Long Lake for the period leading up to a Land Contract Agreement. Land Contract Agreement will be executed and a closing within 60 days of signed Lease Agreement. If for any reason currently unknown by either party a Land Contract Agreement cannot be reached the Tenant agrees to Lease the Property for a minimum term of 12 months.
>
> 2. The monthly lease payment shall be One Thousand Five hundred dollars ($1,500.00) per month . . . . If at anytime tenant is behind on lease payment 15 days or more Landlord has the right to evict and request all belongs [sic] to be removed from the property within 15 days.
>
> 3. Security deposit of Fifteen Thousand dollars ($15,000.00) to be paid upon signed lease agreement. Security deposit of $15,000.00 to be deducted from purchase price upon closing of Land Contract Agreement.

On about March 6, 2020, plaintiff served a notice to quit possession of the subject property on defendants. It was filed in the district court on July 17, 2020. Also on July 17, 2020, plaintiff filed her complaint to recover possession of the subject property in the district court. The complaint indicated that defendants owed rent from March 2020 to July 2020.

On October 23, 2020, the district court issued a notice to appear to the parties, indicating that a trial was scheduled for November 2, 2020. Defendants received the summons, complaint, and notice to appear on October 26, 2020.

On October 30, 2020, defendants moved to adjourn the trial/hearing. The motion stated, in relevant part, as follows:

> 3. Defendants' attorneys received notice from Defendants . . . on October 27, 2020, four days before the scheduled hearing contrary to Michigan motion practice.

4. Defendants' attorneys received no notice from opposing counsel from the Plaintiff's attorney whatsoever.

5. Defendants' attorneys in the interest justice [sic] and Michigan Court Rules must be given appropriate time to prepare for such a hearing.

\* \* \*

7. During the special circumstances affecting this Honorable Court, discussions touched and concerned the existence of a land contract dispute between the Plaintiff and the Defendants that has been recharacterized by the Plaintiff as a lease pursuant to a divorce judgment wherein the Plaintiff received the Premises in question as part of the Divorce Judgment.

\* \* \*

11. Defendants' respectfully demand time to prepare a counter suit to the Plaintiff's action as the result of the Plaintiff's blatant disregard and respect for this Honorable Court and its governing rules as well as respect for the rights of the Defendants and the rule of law.

The district court conducted a virtual hearing on November 2, 2020, as originally scheduled. At the hearing, plaintiff's counsel introduced her case as follows:

The renters, the tenants, have been in possession since August of 2016. They stopped paying rent as of February 2020. So they owe rent from March through November, current date, in the amount of $1,500 per month. The lease agreement, which was attached to my complaint, also provides for $50 per month late fee, which would also be added to that.

Defendants' counsel responded as follows:

Yes. We've provided the Court with a brief. Not only were we not given notice, at least for the dialogue that your Honor can review that suggests that there's been discussions with regard to the defendants and the characterization of their relationship, the arrangement, as being a land contract as opposed to a lease, and we believe that in terms of the divorce action that there was an arrangement between the plaintiffs, Jamie and Debra Nash, that devolved to their benefit. Meaning there was a land contract arrangement as with Jamie that was disallowed after the divorce, and the entire matter as has been brought forward by the plaintiff, by Debra Nash, now is in excess of the jurisdictional limits and, in fact, should have been brought in the circuit court.

The district court clarified with defendants' counsel that he was seeking a change of venue because the amount in controversy exceeded $25,000, notwithstanding that such an argument was not raised in his motion. When the district court explained that it had exclusive jurisdiction over landlord-tenant cases, defendants' counsel then complained that "the notice was defective." The

district court responded by explaining that the complaint appeared to properly reflect defendants as the parties.

Defendants' counsel reverted back to his argument that jurisdiction was not proper in the district court because this case involved a land contract. Plaintiff's counsel responded "[t]his is a lease agreement," and the parties "never entered into a land contract."

The district court then clarified with the parties that defendants had not filed a "CDC eviction moratorium declaration," and it ruled that plaintiff properly provided defendants with notice of the proceedings. After doing so, the district court asked defendants' counsel to "tell me what your defense is to this case and with legal authority," and he explained as follows:

> The amount in controversy, your Honor, and what you will say is you have your (inaudible). We would argue that that would be appealed. We also would argue that there is an anomaly in the lease. There is a $15,000 amount for damages, which is totally beyond avail. I would ask your Honor if you've ever seen that kind of damages that appear in that lease. Moreover, it's a one-page lease.

> * * *

> In addition, your Honor, there have been improvements that have been made on the property to the tune of about $40,000.

> * * *

> There are improvements that were made on the property in reliance of the land contract. That amount is in excess of $40,000. That takes it out of small claims for sure.

> * * *

> What happened was that the lease was signed because Jamie Nash was involved in a divorce. He obligated himself and Debra Nash, and the defendants relied upon that. And so what you find is a short-term lease contract with $15,000 (inaudible). That's a little unusual, one would say.

> And so what we really need, your Honor, is a hearing on the matter.

The district court replied that defendants were presently receiving a hearing on the matter, and it indicated that it would review the written submissions and issue a decision after the hearing.

On November 30, 2020, the district court issued its seven-page opinion and order. The district court first concluded that there was no land contract between the parties because "[t]here is no evidence that Defendants executed the option to purchase timely in accordance with the language of paragraph 1 of the subject lease. . . . The Court finds that Defendants did not comply with the terms within the time specified, therefore, the Court finds that there is no land contract." Second, the district court concluded that the $15,000 "security deposit" referenced in the lease was actually "a down payment for a land contract that was never executed," and as a result, plaintiff

-4-

had to return that money to defendants. Third, the district court concluded that defendants had sufficient notice of the trial under MCR 4.201(C)(1) and MCL 600.5735(2)(b). Consequently, the district court awarded possession of the subject property to plaintiff, as well as damages of $13,950, which represented outstanding rent of $12,000 and $1,950 in late fees.

Plaintiff moved for reconsideration to change the damages award, and the district court granted the motion and increased the award from $13,950 to $15,450. In addition, in January 2021, the district court ordered defendants to pay $1,500 a month to the court's escrow account, pending resolution of the case.

After some procedural confusion, on February 9, 2021, defendants filed an application for leave to appeal in the circuit court. In the supporting brief, defendants argued that the district court erred because they "had insufficient notice of the trial date from the Court to prepare for their sole opportunity to present their case and preserve their legal property rights." Defendants explained that under the doctrine of partial performance, they were land-contract vendees, not tenants. Specifically, defendants explained as follows:

> Appellants currently and have always occupied the Property. Moreover, Appellants have made significant improvements to the Property in the expectation that they would ultimately own the Property. . . .
>
> Lastly, Appellants have been paying all property-related expenses, as the true owner would. More specifically, Appellants paid the homeowners insurance, property taxes, and water bills for the Property. Should this Court grant Appellants' request to remand for a new trial, Appellants could present evidence of the same to the Court. Above all and most importantly, in contemplation of the Contract, Appellants paid Appellee and Nash $15,000.00 to move into the Property (as shown in the Order.)
>
> Lastly, Appellants have invested tens of thousands of dollars in the Property as it was, and still is, their intention to make the Property their retirement home. Had Appellants not been prejudiced by the District Court's failure to issue their timely Trial Order or by the Court's refusal to honor Appellant's request for the trial's adjournment, Appellants would have been able to prove the existence of a land contract. They will also be able to demonstrate that the Appellee filed the wrong complaint in the trial court, as this is a question of a land contract forfeiture action and not a mere eviction.

In support of their argument that the parties had a land contract, defendants attached as Exhibit A the following August 5, 2016 e-mail from Nash to defendant Vanston:[2]

Amy,

_____

[2] The right side of the e-mail is cut off, presumably due to an error in printing. The cutoff points are represented as ellipses.

I have attached a Lease Agreement to get you moved in until we get the Land Contract finalized and a closing. Please review and let me know if it lo . . .

I have also attached my comments or counter offer on the Land contract document you had provided to me. I did not plan to sell the house on a land . . .

Deb and I do. After reviewing some land contract sales and documents I do believe I am being fair with my changes. Please review and give me you . . .

When we come to an agreement on price & terms I will have a lawyer review for both of our benefits and we can make it final.

Jamie Nash

In her response brief, plaintiff argued that the parties never had a land contract and that defendants were tenants subject to the lease. Plaintiff also argued that notice was proper under MCR 4.201 and MCL 600.5735, and that the doctrine of partial performance does not apply because there was no land contract in the first instance.

The circuit court held oral argument on May 12, 2021. After the parties mostly rested on their respective briefs, the circuit court affirmed the district court, reasoning as follows:

> Okay. I – I do question, I have to say, the – the timing of notices. Uh, I acknowledge that that was not ideal. However, uh, I have no evidence before me that what the district court did in terms of her ruling based on the evidence that was in front of her was incorrect in any way. Uh, I – based on the evidence that's before me and was before her, I think her ruling was proper. I think the notice issue was harmless error at this point. And for those reasons, I am affirming, uh, the district court judge and granting possession to the appellee with the back, uh, rent due.

After the ruling, defendants' counsel briefly noted that "we're not disputing the back rent owed."

Shortly thereafter, in June 2021, plaintiff filed a motion in the district court to immediately evict defendants, and defendants filed a "CDC Declaration" to halt the eviction. In a six-page opinion and order, the district court granted plaintiff's motion, reasoning that the CDC eviction moratorium does not apply when a tenant engages in criminal activity, and in this case, defendants violated state law by performing substantial repairs on the subject property without properly hiring a "residential builder." Thus, the district court ordered defendants to vacate the subject property by July 9, 2021.

On September 11, 2021, defendants filed a delayed application for leave to appeal in this Court. We granted the application. *Nash v Kerti*, unpublished order of the Court of Appeals, entered February 10, 2022 (Docket No. 358494).

## II. DUE PROCESS

Defendants argue that the district court violated their procedural due-process rights by holding trial only seven days after service of the relevant documents, given that the disputed existence of an implied-in-fact land contract required more time to prepare and present evidence. We conclude that any error was harmless because, for the reasons explained below, the parties' relationship was governed by the written lease.

We first note that this issue is arguably waived because it was not raised in the district court or the circuit court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382-383; 741 NW2d 61 (2007). Ordinarily, however, this Court reviews de novo whether a party was afforded procedural due process. *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021). "Our review of a circuit court's review of a district court's order is also de novo." *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016).

"[D]ue process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848NW2d 380 (2014). "To comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id*. (quotation marks and citation omitted). Courts generally consider the following three factors to determine whether procedural due process is satisfied:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Mathews v Eldridge*, 424 US 319, 325; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

Most claims of a violation of procedural due process are subject to a harmless-error analysis. See *PT Today, Inc v Comm'r of Office of Fin and Ins Servs*, 270 Mich App 110, 145; 715 NW2d 398 (2006) (declining to award the plaintiffs relief for an alleged procedural due-process violation because the trial court would have granted summary disposition on different grounds); *Verbison v Auto Club Ins Ass'n*, 201 Mich App 635, 641; 506 NW2d 920 (1993) (declining to award the plaintiff relief because "an opportunity to confront adverse witnesses or to present witnesses, evidence, and arguments would have made no difference" in the case).

In *Lindsey v Normet*, 405 US 56; 92 S Ct 862; 31 L Ed 2d 36 (1972), the U.S. Supreme Court considered the constitutionality of "Oregon's judicial procedure for eviction of tenants after nonpayment of rent." *Id*. at 58. The procedure provided that the landlord may bring an action for possession upon the failure of the tenant to pay rent, and "[s]ervice of the complaint on the tenant must be not less than two nor more than four days before the trial date." *Id*. at 63. In addition, "a tenant may obtain a two-day continuance, but grant of a longer continuance is conditioned on a tenant's posting security for the payment of any rent that may accrue . . . ." *Id*.[3] The issue before the Court, in relevant part, was whether "the requirement of a trial no later than six days after

---

[3] There were other statutory provisions discussed in *Lindsey* that are not relevant to this case.

service of the complaint unless security for accruing rent is provided" violated procedural due process. *Id*. at 64. The Court held that this requirement did not violate procedural due process, reasoning as follows:

> In those recurring cases where the tenant fails to pay rent or holds over after expiration of his tenancy and the issue in the ensuing litigation is simply whether he has paid or held over, we cannot declare that the Oregon statute allows an unduly short time for trial preparation. Tenants would appear to have as much access to relevant facts as their landlord, and they can be expected to know the terms of their lease, whether they have paid their rent, whether they are in possession of the premises, and whether they have received a proper notice to quit, if one is necessary. Particularly where, as here, rent has admittedly been deliberately withheld and demand for payment made, claims of prejudice from an early trial date are unpersuasive. . . . Of course, it is possible for this provision to be applied so as to deprive a tenant of a proper hearing in specific situations, but there is no such showing made here, and possible infirmity in other situations does not render it invalid on its face. [*Id*. at 64-65.]

It added that "it is permissible to segregate an action for possession of property from other actions arising out of the same factual situation that may assert valid legal or equitable defenses or counterclaims." *Id*. at 67.

In Michigan, summary proceedings for the possession of real property are governed by MCL 600.5701 *et seq*. It applies to both leases, see MCL 600.5714(1), and "executory contract[s] for the purchase of the premises," see MCL 600.5726. MCL 600.5735 provides, in relevant part, as follows:

> (1) The court in which a summary proceeding is commenced shall issue a summons, which may be served on the defendant by any officer or person authorized to serve process of the court. The summons shall command the defendant to appear for trial in accordance with the provisions of subsection (2) . . . .

> (2) A summons issued under this section shall command the defendant to appear for trial as follows:

> (a) Within 30 days of the issuance date of the summons in proceedings under [MCL 600.5726], in which event the summons shall be served not less than 10 days before the date set for trial.

> (b) Within 10 days of the issuance date of the summons in all other proceedings, in which event the summons shall be served not less than 3 days before the date set for trial.

Relatedly, MCR 4.201(C)(1) provides that a summons in a summary proceeding "must command the defendant to appear for trial in accord with MCL 600.5735(2)."

"The remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory." MCL 600.5750. "That provision evidences the Legislature's intent that summary proceedings for possession of property be handled expeditiously. Plainly the Legislature took these cases outside the realm of the normal rules concerning merger and bar in order that attorneys would not be obliged to fasten all other pending claims to the swiftly moving summary proceedings." *JAM Corp v AARO Disposal, Inc*, 461 Mich 161, 168-169; 600 NW2d 617 (1999). Thus, for example, a district court may decide the issue of possession in summary proceedings, and the losing party may maintain a separate action for unjust enrichment notwithstanding that the separate action would ordinarily be barred by res judicata. See *id*. at 166, 170. Moreover, a district court may bifurcate a counterclaim for monetary damages from the initial request for possession. See MCL 600.5739(1).

In the matter before us, the notice was within 10 days as required by MCL 600.5735(2)(b), and the summons was served more than three days before the trial date as required by the same statutory provision. Thus, plaintiff and the district court complied with the statute and court rule governing notice in summary proceedings for violation of a lease.[4] The question remains whether the expedited proceedings—including both the notice a few days before trial and the district court's refusal to adjourn the hearing—violated procedural due process.

We initially note that plaintiff alleged at the start of this case, and defendants did not dispute, that they ceased paying $1,500 a month in March 2020 despite the fact that they were required to do so. In fact, defendants conceded in the circuit court that they were responsible for the missed payments. Thus, if the parties had a lease requiring rent payments of $1,500 a month, defendants presumably lost the right to possession of the subject property through summary proceedings because they failed to pay rent. See MCL 600.5714(1)(a). On the other hand, if the parties had an implied-in-fact land contract requiring mortgage payments of $1,500 a month, then defendants presumably lost the right to possession of the subject property through either forfeiture or foreclosure.[5] In other words, because defendants ceased the $1,500 monthly payments in March

---

[4] The notice was insufficient under MCL 600.5735(2)(a), which governs summary proceedings for breach of a land contract, because it was served "less than 10 days" before trial. To that extent, the notice was insufficient under MCR 4.201(C)(1) as well. However, defendants do not argue on appeal that the notice violated the statute or the court rule. Instead, defendants only argue that the notice and accompanying expedited proceedings violated procedural due process.

[5] When a vendee of a land contract breaches that contract, the vendor has two possible options— forfeiture or foreclosure. With regard to forfeiture, MCL 600.5726 provides that a vendor of a breached land contract may institute summary proceedings "but only if the terms of the contract expressly provide for termination or forfeiture, or give the vendor the right to declare a forfeiture, in consequence of the nonpayment of any moneys required to be paid under the contract or any other material breach of the contract." Further, MCL 600.5750 provides that "a judgment for possession after forfeiture of an executory contract for the purchase of premises shall merge and bar any claim for money payments due or in arrears under the contract at the time of trial." Thus, when a land contract is forfeited, the vendor regains possession of the property but is not entitled to "money payments due or in arrears."

-9-

2020, they presumably lost the right to possession of the subject property regardless of whether the parties had a landlord-tenant relationship under a lease or a vendor-vendee relationship under a land contract. However, defendants seem to assume that if they can successfully show an implied-in-fact land contract, then they will be entitled to possession of the subject property, as well as an ultimate purchase of the subject property at some point in the future. That assumption is questionable.

With that in mind, we acknowledge that defendants have a reasonable argument that the expedited proceedings violated procedural due process. While the seven-day period complied with the relevant statutes and court rules, that may not be sufficient time to prepare evidence, witnesses, and so forth to determine whether the parties had an implied-in-fact land contract. As defendants note, for example, resolution of this question might depend on the extent to which they improved the subject property, which would likely require multiple billing statements and testimony in support.

The U.S. Supreme Court's reasoning in *Lindsey*, 405 US 56, is distinguishable from the case before this panel because the six-day trial period upheld in *Lindsey* was based upon the Court's general assumption that "[i]n those recurring cases where the tenant fails to pay rent or holds over after expiration of his tenancy and the issue in the ensuing litigation is simply whether he has paid or held over, we cannot declare that the Oregon statute allows an unduly short time for trial preparation." *Id.* at 64-65. This case, in contrast, allegedly involves a far more fact-specific question of whether the parties had an implied-in-fact land contract. Again, procedural due process does not simply require notice and an opportunity to be heard, but that the proceedings do so with "a meaningful time and in a meaningful manner." *Bonner*, 495 Mich at 235 (quotation marks and citation omitted). It is arguable that defendants in this case did not have an opportunity to be heard on the issue of an implied-in-fact land contract "in a meaningful manner."

The problem for defendants here, however, is that they do not explain how this arguable violation of procedural due process would entitle them to relief. As noted above, even assuming that defendants are correct that the parties had an implied-in-fact land contract, defendants undisputedly ceased making the required mortgage payments in March 2020. As a result, defendants presumably lost the right to possession of the subject property, and the best-case scenario would be either a court-ordered sale of the subject property with any surplus proceeds being paid to defendants, or a ruling from the district court that the subject property had to be forfeited to plaintiff, and defendants would not be liable to plaintiff for the lack of $1,500 monthly payments between March 2020 and November 2020. But again, defendants do not argue or even mention either possibility.

---

With regard to foreclosure, a vendor of a breached land contract may file an action for foreclosure in circuit court, see MCL 600.3101, the circuit court then sells the property, see MCL 600.3115, and the vendee remains liable to the vendor if the sale proceeds are insufficient but retains any surplus proceeds, see MCL 600.3135. Thus, when a land contract is foreclosed, there is a court-ordered sale of the property, and the vendor is not entitled to any surplus proceeds but may pursue a deficiency against the vendee.

In any event, as explained below, defendants fail to show that an implied-in-fact land contract would be enforceable. Simply put, defendants' fact-specific arguments are beside the point because the terms of the written lease control. Further, to the extent that defendants claim that they spent $40,000 improving the subject property in reliance on that implied-in-fact land contract, defendants may maintain a separate action for unjust enrichment. Accordingly, any possible violation of procedural due process was harmless error. See *PT Today,* 270 Mich App at 145; *Verbison*, 201 Mich App at 641.

### III. MOTION TO ADJOURN HEARING

Defendants argue that the district court abused its discretion by refusing to adjourn the hearing because they needed additional time to prepare and present evidence concerning the existence of the alleged implied-in-fact land contract. We again conclude that any error was harmless because the terms of the written lease controlled the parties' relationship.

This Court reviews a lower court's decision on a motion for an adjournment for an abuse of discretion. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

MCR 4.201(J) provides that the district court, in summary proceedings, may adjourn the trial for up to 56 days:

> When the defendant appears, the court may try the action, or, if good cause is shown, may adjourn trial up to 56 days. If the court adjourns trial for more than 7 days, an escrow order may be entered . . . .

"[I]n order for a trial court to find good cause for an adjournment, a legally sufficient or substantial reason must first be shown." *In re Utrera*, 281 Mich App at 11 (quotation marks and citation omitted).

In light of defendants' presentation of arguments in the district court, we doubt that the district court abused its discretion by denying defendants' motion to adjourn the hearing. The written motion itself appeared to be exclusively based upon the alleged lack of notice which, as the district court correctly noted, was a meritless argument. While the written motion did briefly reference a "land contract," it did not include any context or explanation, and that motion cannot be reasonably understood as requesting an adjournment for additional time to gather evidence for the alleged implied-in-fact land contract. Moreover, defendants' counsel was unclear about his position during oral argument in the district court. He occasionally changed between clearly meritless arguments, such as insufficient notice and lack of jurisdiction because defendants had a possible $40,000 counterclaim, and somewhat more reasonable arguments, such as the need for additional time to prepare and present evidence about an implied-in-fact land contract. Given this presentation of arguments, it is understandable that the district court refused to adjourn the hearing.

On the other hand, by the end of oral argument, the district court was aware that defendants' position was that they had an implied-in-fact land contract. The district court's understanding in this regard was reflected by the fact that it addressed and decided this issue in its subsequent written opinion and order. Moreover, as previously explained, seven days is insufficient to prepare and present the variety of evidence that may be needed to show the existence of an implied-in-fact land

contract over several years. Thus, it is at least arguable that the district court abused its discretion by refusing to adjourn the hearing.

In any event, as with the procedural due-process issue, any error was harmless because the terms of the written lease control the parties' relationship. An adjournment of the hearing to allow defendants to gather evidence about such facts as the extent of the home improvements would not have changed the outcome of the case. Thus, the district court's refusal to adjourn the hearing was harmless error. See MCR 2.613(A).[6]

## IV.  STATUTE OF FRAUDS

Defendants argue that the evidence would have shown that the parties had an oral land contract for sale of the subject property that was not barred by statute of frauds due to partial performance, had the district court allowed defendants to present evidence in that regard.[7]  We conclude that defendants' argument is meritless because a contract cannot be implied in fact when there is an express contract covering the same subject matter.

The lower court's finding regarding the existence of an implied-in-fact context is reviewed for clear error.  *In re Lewis Estate*, 168 Mich App 70, 74; 423 NW2d 600 (1988).  "A finding of fact is clearly erroneous when although there is evidence to support it a reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Id*.

The statute of frauds generally requires that land contracts be in writing.  See MCL 566.106 and MCL 566.108.  "To satisfy the statute of frauds, a writing need not contain all the terms of the agreement to be enforceable, and the writing may be considered with the admitted facts and extrinsic evidence showing the surrounding circumstances." *Barclae v Zarb*, 300 Mich App 455, 470; 834 NW2d 100 (2013).

Partial performance of an agreement may remove it from the statute of frauds.  *Giordano v Markovitz*, 209 Mich App 676, 679; 531 NW2d 815 (1995).  In addition, "[p]ossession and improvements in regard to the property may remove it from the statute." *Zaborski v Kutyla*, 29

---

[6] Defendants briefly argue that the refusal to adjourn the hearing was prejudicial because they did not have time to prepare the CDC eviction declaration. This is meritless. Notwithstanding that the CDC eviction moratorium only applied to "tenant[s]," not land-contract vendees, we judicially notice that the relevant document was simple and required only minutes to prepare. See https://rentalassistancepbc.org/pdf/CDC_Moratorium.pdf, accessed February 15, 2023. Regardless, defendants cannot be awarded any relief at this time because the CDC eviction moratorium is no longer in effect.

[7] Defendants' brief on appeal is a bit imprecise. Defendants state in the discussion of this issue that the parties had "a valid oral land contract." However, the essence of defendants' argument is that the parties had an implied-in-fact contract. The difference between these two contracts is that an oral contract is an express agreement that is not memorialized in writing, whereas an implied-in-fact contract is an implied agreement that is suggested through actions. See generally, *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 636-637; 473 NW2d 268 (1991).

Mich App 604, 607; 185 NW2d 586 (1971). With regard to partial performance of land contracts, our Supreme Court has explained as follows:

> Partial payment of the purchase price alone is not sufficient to take the case out of the statute [of frauds]. Possession alone is insufficient, but where there is partial payment and possession accompanied by acts of ownership of the vendee changing the character of the freehold, and lessening its value, a court of equity may award a decree for specific performance. [*Pearson v Gardner*, 202 Mich 360, 362; 168 NW 485 (1918).]

However, it is a longstanding principle of contract law that a contract cannot be implied in fact when there is an express contract on the matter. See *Miller v Stevens*, 224 Mich 626, 632; 195 NW 481 (1923) ("Where there is no express contract a contract may be implied in fact . . . ."); *Tustin Elevator & Lumber Co v Ryno*, 373 Mich 322, 330; 129 NW2d 409 (1964) (quoting same). See also 1 Williston on Contracts § 4:21 (4th ed) ("There can be no implied in fact if there is an express contract covering the subject matter involved. Thus, the existence of an express contract precludes the possibility of an implied contract of a different or contradictory nature.") (citations omitted); *Chanay v Chittenden*, 115 Ariz 32, 35; 563 P2d 287 (1977) ("There can be no implied contract where there is an express contract between the parties in reference to the same subject matter.").

In this case, it is clear that the parties never entered into a written land contract. The parties were apparently close to doing so in August 2016, when Nash wrote to defendant Vanston that "[w]hen we come to an agreement on price & terms . . . we can make it final." But defendants have never suggested that it actually became finalized by a written agreement. Instead, defendants offer several facts indicating that the parties understood that they had a land contract, such as the fact that defendants paid a $15,000 "security deposit," which is better understood as a down payment; that the subject property's status on Zillow was changed to "Pending Sale" in about August 2016; that defendants made improvements exceeding $40,000 to the subject property, which were completed in anticipation of eventually owning the subject property; and that Nash had conversations with defendants in May and July 2019 concerning mortgage loans for the subject property.

Certainly, these facts show that the parties engaged in serious negotiations for a land contract and that defendants believed that they would eventually assume ownership of the subject property. Otherwise, they would not have performed such extensive improvements. However, the August 2016 written lease between the parties contemplates the possibility that they would not be able to agree upon the terms of a land contract, and in that case, the parties would simply have a landlord-tenant relationship. Specifically, the lease states that "[i]f for any reason currently unknown to either party a Land Contract Agreement cannot be reached the Tenant agrees to Lease the Property for a minimum of 12 months." The preceding sentence of the lease refers to a "Land Contract Agreement" being "executed." Taken together, these two sentences indicate that a land contract is "reached" when it is "executed," and that when a land contract is not "executed," it is not "reached" and the parties instead have an ordinary lease. The latter situation is what occurred here.

Finding that the parties had an implied-in-fact land contract that replaced the terms of the written lease would be contrary to the principle of contract law that a contract cannot be implied in fact when there is an express contract covering the same subject matter. Therefore, the district court did not clearly err by finding that the parties did not have an implied-in-fact land contract, and the circuit court did not err by affirming this finding.

For these reasons, we conclude that the parties' relationship was governed by the written lease and that a contract for a sale of the subject property cannot be implied in fact. Defendants' arguments about improvements to the subject property, conversations with Nash, Zillow status, and so forth, are beside the point because defendants do not even suggest that the parties had a written land contract that replaced the written lease. To the extent that defendants argue that it would be unfair for plaintiff to retain the benefits of the alleged $40,000 improvements to the subject property, as stated *supra*, they may maintain a separate action for unjust enrichment. See *JAM Corp* 461 Mich at 166, 170. See also *Ollig v Eagles*, 347 Mich 49, 60-61; 78 NW2d 553 (1956) (explaining that a party may maintain an action for unjust enrichment when he or she mistakenly but in good faith improves the real property of another).

## V. CONCLUSION

The parties' relationship was governed by the terms of the written lease, and a land contract cannot be implied in fact because doing so would conflict with that written lease. Therefore, any procedural error that occurred as a result of defendants' inability to present fact-specific evidence concerning the alleged implied-in-fact land contract was harmless error. Accordingly, we affirm.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan

-14-